TAMMY BARBOUR, Employee, Plaintiff v. REGIS CORP., Employer; EMPLOYERS INSURANCE OF WAUSAU, Carrier, Defendants

No. COA03-1134

(Filed 21 December 2004)

### 1. Workers' Compensation— causal connection between injury and condition—fall while styling hair

The evidence in a workers' compensation case supported the Industrial Commission's findings that plaintiff's cervical condition was causally related to her work-related fall. Even though one doctor testified that his opinion was based on speculation, there was other testimony that a causal connection existed to a reasonable degree of medical certainty; the Commission is the sole judge of the witnesses and the weight of their testimony.

## 2. Workers' Compensation— ongoing disability—evidence of suitable employment—not forthcoming

The Industrial Commission did not err by awarding ongoing disability benefits where competent evidence supported the finding of a compensable work-related injury, plaintiff presented evidence of ongoing disability, and defendants did not then carry their burden of showing that suitable jobs were available or that plaintiff had refused suitable employment.

Appeal by defendants from an opinion and award entered 30 April 2003 by the North Carolina Industrial Commission. Heard in the Court of Appeals 24 August 2004.

*Law Offices of George W. Lennon, by George W. Lennon and W. Bain Jones, Jr., for plaintiff-appellee.*

*Hedrick & Morton, L.L.P., by G. Grady Richardson, Jr. and P. Scott Hedrick, for defendant-appellants.*

HUNTER, Judge.

By this appeal, Regis Corporation and Employers Insurance of Wausau ("defendants"), challenge the Industrial Commission's opinion and award of temporary total disability compensation and medical expenses to Tammy Barbour ("plaintiff"). Specifically, defendants contend (I) plaintiff's cervical condition is not causally related to her original injury by accident and therefore not compensable; (II) plaintiff is not disabled under the North Carolina's Workers' Compensation Act and therefore she is not entitled to ongoing disability benefits; and (III) defendants are not estopped from denying plaintiff's cervical injury claim. After careful review, we affirm the Commission's opinion and award.

On 1 June 1998, plaintiff was a hair salon manager working for Smart Style Regis in Smithfield, North Carolina. Her duties included monitoring inventory, hiring personnel, making bank deposits and hair styling. On 1 June 1998, plaintiff was removing hair rollers from a customer's hair. After she finished one side of the customer's hair, she started walking around the chair to the other side of the customer to work on that side of the customer's hair. As she was walking, plaintiff's feet slid out from under her and she landed on her left shoulder and neck. After falling, she finished working on her customer and went home to rest because of pain.

BARBOUR v. REGIS CORP.

[167 N.C. App. 449 (2004)]

Later that evening, plaintiff sought treatment with Johnston Memorial Hospital because the pain had not dissipated. She advised the hospital that she was suffering from neck and left shoulder pain. She was prescribed pain medication, ordered not to work for two days and was advised to follow up with Dr. Richard John Alioto.

On 5 June 1998, plaintiff had her initial visit with Dr. Alioto. She informed Dr. Alioto that she fell landing on her left shoulder and neck at work and that she was still experiencing pain and numbness in her left arm. Dr. Alioto diagnosed plaintiff with left AC joint sprain, probably grade 1 or 2. After a few follow-up visits, plaintiff did not receive any treatment from Dr. Alioto from 25 June 1998 until 7 January 1999.

After plaintiff returned to work at the end of June 1998, she continued to experience pain. However, she endured the pain because the salon was "short-staffed." At the beginning of the new year, she returned to Dr. Alioto complaining of pain radiating up into her neck, the shoulder area, and in her arm. Dr. Alioto diagnosed her with rotator cuff tendinitis and AC joint arthritis. After her follow-up visit on 26 January 1999, Dr. Alioto diagnosed her with a cervical strain. After several more visits, plaintiff underwent surgery on 15 March 1999.

Immediately after the surgery, plaintiff remained out of work for four weeks. During this time period, plaintiff returned to Dr. Alioto for a post-surgery visit on 25 March 1999. At that time, Dr. Alioto reported plaintiff was doing well. Thereafter, she returned to work on light duty which consisted of scheduling, greeting customers, ordering inventory, and making bank deposits. Approximately two months after the surgery, in May, plaintiff resumed hairstyling for four hours a day. After she resumed hairstyling, plaintiff felt pain in the left side of her neck, shoulder and arm. Plaintiff discussed her pain with Dr. Alioto during her doctor's visits at the end of April, in May and in June. On 1 July 1999, Dr. Alioto suspected that her cervical problems were aggravated by her fall. However, during his deposition, Dr. Alioto stated that his suspicions were speculative and could not state to a reasonable degree of medical certainty that plaintiff's work-related fall caused or aggravated her cervical condition.

On 1 July 1999, Dr. Alioto also gave plaintiff a referral for a neurosurgical evaluation. On 28 September 1999, plaintiff had her first appointment with Dr. William S. Lestini, an orthopaedic surgeon. During the course of his treatment, Dr. Lestini conducted several diagnostic tests, prescribed medications and physical therapy, and

performed a nerve root block in plaintiff's upper neck. Dr. Lestini testified to a reasonable degree of medical certainty that plaintiff's neck pain was either caused or aggravated by her 1 June 1998 injury.

Finally, plaintiff was referred to Dr. James S. Fulghum, III, a neurosurgeon for a review and assessment of plaintiff's condition. He agreed with the finding that plaintiff had degenerative disc disease in her cervical area and opined that falling as plaintiff did could have caused an acceleration of degenerative disc disease. Dr. Fulghum also stated to a reasonable degree of medical certainty that if plaintiff fell, suffered an injury, and experienced pain symptoms afterwards without having experienced pain prior to the fall, plaintiff's pain was caused by the fall. However, he also testified that if she had no complaints of neck pain for a year and then only complained of neck pain after her shoulder had been worked on, then it would be very unlikely that the injury had anything to do with the neck pain.

After plaintiff suffered her work-related injury on 1 June 1998, defendants filed a Form 60 on 16 June 1998, admitting plaintiff's right to compensation describing her injury as "MPRT," pain in multiple body parts, and began receiving temporary total disability benefits. After one year of treatment and surgery, plaintiff was terminated from her employment with Smart Style Regis in June 1999. The next year, Dr. Lestini opined that plaintiff was at maximum medical improvement for her neck and Dr. Alioto opined that plaintiff was at maximum medical improvement on 2 March 2000 and assigned a fourteen percent (14%) permanent partial impairment of the left upper extremity.

In July 2000, plaintiff was given work restrictions and began working with Benson Chiropractic as a receptionist. However, on 24 August 2000, plaintiff resigned from her employment due to severe neck pain. In November 2000, defendants filed a Form 33 request for hearing seeking to terminate benefits on the grounds that plaintiff was no longer disabled. On 28 February 2002, the deputy commissioner found and concluded plaintiff's "cervical stenosis, degenerative disc disease and accompanying pain were not caused by, aggravated by or accelerated by plaintiff's June 1, 1998 injury by accident." The deputy commissioner concluded plaintiff's "pain which prevented [her] from continuing her employment" was "not caused by or contributed to by her June 1, 1998 compensable injury." After appeal before the Full Commission, on 30 April 2003, the Commission reversed the deputy commissioner and determined that plaintiff's cervical condition and degenerative disc disease were aggravated or

accelerated by the 1 June 1998 fall, that plaintiff has not reached maximum medical improvement for her cervical neck condition, and that plaintiff was disabled and unable to earn wages in her regular employment or in any other employment after 24 August 2000. Accordingly, the Commission ordered defendants to pay all medical expenses incurred or to be incurred as a result of the injury by accident, including treatment of plaintiff's cervical condition. Defendants appeal.

[1] Defendants first contend the Commission's findings of fact determining plaintiff's cervical condition was causally related to her work-related fall on 1 June 1998 "completely lacked competent evidence to support them" and were "based on nothing more than mere speculation and conjecture in violation of the law." However, we do not reach defendants' contentions because they have admitted liability and compensability for plaintiff's neck injury.

On 16 June 1998, defendants filed a Form 60 "Employer's Admission of Employee's Right to Compensation Pursuant to N.C. Gen. Stat. § 97-18(b)" in which defendants describe plaintiff's injury as "Pain MPRT," or pain in multiple body parts, which resulted from an injury occurring on 1 June 1998. As explained in *Sims v. Charmes/Arby's Roast Beef,* 142 N.C. App. 154, 159-60, 542 S.E.2d 277, 281-82 (2001), an employer who files a Form 60 pursuant to N.C. Gen. Stat. § 97-18(b) will be deemed to have admitted liability and compensability.[1]

Nonetheless, defendants argue they should be allowed to contest the compensability of plaintiff's cervical condition because the con-

---

1. "G.S. § 97-82(b) specifically states that payment pursuant to G.S. § 97-18(b) (a Form 60 Payment) 'shall constitute an award of the Commission on the question of compensability of and the insurer's liability for the injury for which payment was made.' Moreover, Form 60 states only '[y]our employer admits your right to compensation for an injury by accident on (date) . . . .' Below this acknowledgment of liability is a section provided for a description of the accident, the average weekly wage and resulting compensation rate, and the date which disability begins and ends. The section is captioned, in bold print and capital letters: 'THE FOLLOWING IS PROVIDED FOR INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE AN AGREEMENT.'

In contrast, the North Carolina Industrial Commission Form 21, which constitutes an award of the Commission as to both compensability and amount when properly approved states explicitly that the parties agree and stipulate not only as to compensability but also to the employee's average weekly wage. 'Once the Form 21 agreement [is] reached and approved "no party . . . [can] thereafter be heard to deny the truth of the matters therein set forth . . . ." ' " *Watts v. Hemlock Homes of the Highlands, Inc.,* 141 N.C. App. 725, 728, 544 S.E.2d 1,3 (2001) (citations omitted) (emphasis omitted).

dition was non-work related. Defendants contend that "[t]o hold otherwise would be unfair to the employer as a declaration against its interest even when the plaintiff does not have a valid claim." We decline to address defendants' contentions because the Commission correctly concluded plaintiff's cervical condition was either caused or aggravated by her 1 June 1998 work-related fall.

In its Opinion and Award, the Commission found: "34. Plaintiff's cervical stenosis and degenerative disc disease were aggravated or accelerated by the June 1, 1998 injury by accident." In challenging this finding, defendants reference the dissenting opinion of Commissioner Renee Riggsbee which stated a finding that a causal relationship exists between plaintiff's neck condition and the fall would result from a "strained reading of the totality of the medical depositions." Commissioner Riggsbee further stated "[m]edical causation should be based on competent medical opinion and not speculation and conjecture." After careful review of the transcript, depositions and the record below, we affirm the Commission's finding of a causal relationship between plaintiff's work-related injury and her cervical condition.

In reviewing an Opinion and Award from the Industrial Commission:

"The findings of fact by the Industrial Commission are conclusive on appeal if supported by any competent evidence." *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 402, 233 S.E.2d 529, 531 (1977). Thus, on appeal, this Court "does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Anderson [v. Lincoln Constr. Co.]*, 265 N.C. [431,] 434, 144 S.E.2d [272,] 274 [(1965)].

N.C.G.S. § 97-86 provides that "an award of the Commission upon such review, as provided in G.S. 97-85, shall be conclusive and binding as to all questions of fact." N.C.G.S. § 97-86 (1991). As we stated in *Jones v. Myrtle Desk Co.*, 264 N.C. 401, 141 S.E.2d 632 (1965), "[t]he findings of fact of the Industrial Commission are conclusive on appeal when supported by competent evidence, even though there be evidence that would support findings to the contrary." *Id.* at 402, 141 S.E.2d at 633. The evidence tending to support plaintiff's claim is to be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every

**BARBOUR v. REGIS CORP.**

[167 N.C. App. 449 (2004)]

reasonable inference to be drawn from the evidence. *Doggett v. South Atl. Warehouse Co.*, 212 N.C. 599, 194 S.E. 111 (1937).

*Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998).

While in this case Dr. Alioto testified that his 1 July 1999 statement that plaintiff's cervical stenosis was aggravated by her 1 June 1998 work-related fall was speculative, Dr. Lestini testified to a reasonable degree of medical certainty that a causal connection existed between plaintiff's neck condition and her work-related injury. Specifically, Dr. Lestini testified as follows:

> [Q.] If you will, for just a moment, assume that Tammy Barbour experienced no neck pain—as we submit she's testified earlier live in a hearing in this cause—before her fall on 6-1-98; assuming further, if you will, that she had neck pain in the aftermath of her 6-1-98 work fall as she has said she did; assume further that she complained of neck pain throughout her medical appointments with Dr. Alioto, an initial treating physician who, in fact, did surgery on her shoulder.
>
> If you make those assumptions and based upon those assumptions, do you have an opinion satisfactory to yourself as to a reasonable degree of medical certainty as to whether her neck pain could have been proximally caused by the 6-1-98 fall?
>
>     . . . .
>
> A. Given those assumptions, I have no reason to doubt that the current symptoms are not related to the initial injury. as described.

Shortly thereafter, Dr. Lestini testified as follows:

> [Q.] I understand you to say that to a reasonable degree of medical certainty the injury then proximately caused the neck— the fall proximately caused the neck injury?
>
>     . . . .
>
> A. I believe we're saying the same thing and once again I believe, yes, that's the—I agree with that.

Moreover, Dr. Lestini opined that the 1 June 1998 fall would have aggravated any preexisting neck condition.

> Q. Okay. Now, given the—if you make the same assumptions that I gave you earlier, would it not be fair to say also as to a rea-

sonable degree of medical certainty that if there were preexisting degenerative diseases, that such a fall may have aggravated the condition of her neck and caused her neck pain?

. . . .

A. I believe that's true.

Dr. Fulghum also testified to a relationship between plaintiff's fall and an acceleration of plaintiff's degenerative disc condition.

Q. . . . a fall such as was described to you, her falling on a floor and on her left side and on her neck could have caused an acceleration of a degeneration or disc disease; is that correct?

A. Yes, sir.

In each of the hypotheticals, the doctors were told to assume plaintiff complained of neck pain after the fall. Our review of the record indicates plaintiff complained of neck pain immediately after the fall. Indeed, she stated she had left side neck pain when she reported to Johnston Memorial Hospital and, during her initial visit with Dr. Alioto, the doctor reported she appeared uncomfortable in the neck area. Thus, we conclude the Commission's finding that plaintiff's 1 June 1998 work-related fall aggravated or accelerated her cervical stenosis and degenerative disc disease was supported by competent evidence. Even though Dr. Alioto testified that his opinion that there was a causal relationship was based upon mere speculation, " 'the Commission is the fact finding body' " and " 'is the sole judge of the credibility of the witnesses and the weight to be given their testimony.' " *Adams*, 349 N.C. at 680, 509 S.E.2d at 413 (citations omitted). As stated, "on appeal, this Court 'does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding.' " *Id.* at 681, 509 S.E.2d at 414 (citation omitted).

[2] Defendants next contend plaintiff is not entitled to ongoing disability benefits from 24 August 2000, the last date worked, because she is neither disabled as defined by the Workers' Compensation Act nor is her cervical condition compensable because it is a non-work related condition. As stated in *Sims*,

admitting compensability and liability, whether through notification of the Commission by the use of a Form 60 or through paying benefits beyond the statutory period provided for in G.S.

§ 97-18(d), does not create a presumption of continuing disability as does a Form 21 agreement entered into between the employer and the employee.

*Sims*, 142 N.C. App. at 159-60, 542 S.E.2d at 281-82. Thus, "[t]he burden of proving disability . . . remains with plaintiff." *Id.* at 160, 542 S.E.2d at 282.

The Workers' Compensation Act compensates an employee for work related injuries which prevent him from making the equivalent amount of wages he made before the injury. *Watson v. Winston-Salem Transit Authority*, 92 N.C. App. 473, 475, 374 S.E.2d 483, 485 (1988). In order to receive disability compensation under the Act, the mere fact of an on the job injury is not sufficient. The injury must have impaired the worker's earning capacity. *Id.*; *Ashley v. Rent-A-Car Co.*, 271 N.C. 76, 155 S.E.2d 755 (1967).

N.C. Gen. Stat. § 97-2(9) (2003) defines disability as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." In order to find a worker disabled under the Act, the Commission must find:

> (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury.

*Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). Initially, the claimant must prove both the extent and the degree of his disability. *Watson v. Winston-Salem Transit Authority*, 92 N.C. App. at 475, 374 S.E.2d at 485. However, once the disability is proven, "there is a presumption that it continues until 'the employee returns to work at wages equal to those he was receiving at the time his injury occurred.'" *Watson*, 92 N.C. App. at 476, 374 S.E.2d at 485 (quoting *Watkins v. Motor Lines*, 279 N.C. 132, 137, 181 S.E.2d 588, 592 (1971)). That presumption of disability continues until the defendant offers evidence to rebut the presumption. At that point, the burden shifts to the employer to show that the worker is employable. *Radica v. Carolina Mills*, 113 N.C. App. 440, 447, 439 S.E.2d 185, 190 (1994). An employer may rebut the continuing presumption of total disability either by showing the employee's capacity to earn the same wages as before the injury or by showing the employee's capacity to

BARBOUR v. REGIS CORP.

[167 N.C. App. 449 (2004)]

earn lesser wages than before the injury. *Franklin v. Broyhill Furniture Industries*, 123 N.C. App. 200, 209, 472 S.E.2d. 382, 388 (1996) (Walker, J., concurring). To rebut the presumption of continuing disability, the employer must produce evidence that:

(1) suitable jobs are available for the employee;

(2) that the employee is capable of getting said job taking into account the employee's physical and vocational limitations;

(3) and that the job would enable the employee to earn some wages.

*Id.* At any time, the employer may rebut the presumption of disability by showing that the employee has unjustifiably refused suitable employment. N.C. Gen. Stat. § 97-32 (2003); *id.*

In this case, defendants' argument that plaintiff is not entitled to ongoing disability benefits is based upon their contention that plaintiff's cervical condition was non-work related and that plaintiff has not sought treatment for her left shoulder or left AC joint since 1 July 1999. However, as previously discussed, competent evidence supports the Commission's finding that plaintiff's cervical condition is compensable and work-related. Furthermore, defendants concede in their brief that "the only evidence Plaintiff has provided to support her claim of ongoing disability is in regards to her cervical condition." As plaintiff has presented evidence of ongoing disability, the burden shifted to defendants to show that plaintiff refused suitable employment or that suitable jobs were available to plaintiff which plaintiff was capable of acquiring given her physical and vocational limitations and would have paid her some wages. *See id.* On appeal, defendants do not argue suitable employment was available or that plaintiff refused suitable employment. Furthermore, defendants do not contend that the following conclusion of law was unsupported by sufficient findings of fact based upon competent evidence:

5. . . . Plaintiff met her burden of proving that she is physically, as a result of the work-related injury, incapable of any work. . . . Defendants have not shown that suitable jobs are available to plaintiff and that plaintiff is capable of obtaining a suitable job, taking into account both physical and vocation limitations.

Accordingly, we overrule this assignment of error.[2]

---

2. Defendants also reference plaintiff's failure to file a Form 28U after leaving her employment with Benson Chiropractic on 24 August 2000. The failure to complete a Form 28U, "Employee's Request that Compensation be Reinstated After Unsuccessful

Finally, defendants contend they are not estopped to deny plaintiff's unrelated and non-compensable cervical injury claim because they filed a Form 60, paid compensation and did not deny plaintiff's claim within ninety days of filing the Form 60. As we have affirmed the Commission's findings and conclusions determining plaintiff's cervical condition was work-related and that plaintiff is entitled to ongoing disability benefits, we decline to address this assignment of error.

Affirmed.

Judges TIMMONS-GOODSON and McCULLOUGH concur.

---

Trial Return to Work," does not preclude plaintiff from receiving ongoing disability benefits. *See Jenkins v. Public Service Co. of N.C.*, 134 N.C. App. 405, 412, 518 S.E.2d 6, 10 (1999), *reversed in part on other grounds by*, 351 N.C. 341, 524 S.E.2d 805 (2000) (indicating a Form 28U would merely reinstate compensation pending the Commission's determination on whether the return to work was a failed return to work due to a compensable work-related injury).