IRENE PAIT, Employee, Plaintiff v. SOUTHEASTERN GENERAL HOSPITAL, Employer, NORTH CAROLINA INSURANCE GUARANTY ASSOCIATION, Statutory Insurer, Defendants

No. COA11-1286

(Filed 20 March 2012)

**1. Workers' Compensation—total and permanent disability—temporary disability not supported**

The Industrial Commission erred in a workers' compensation case by denying defendants' request to have plaintiff determined to be both totally and permanently disabled. The Commission's findings of fact and conclusion of law as to the temporary nature of plaintiff's disability were not supported by any competent evidence in the record.

**2. Workers' Compensation—hearing—total and permanent disability—standing—ripeness—motive irrelevant—joinder of beneficiaries unnecessary**

The Industrial Commission did not err in a workers' compensation case by permitting a hearing on whether plaintiff was totally and permanently disabled. Defendants had standing to request a hearing on this issue as an employer or insurance carrier is permitted to request a hearing as to a plaintiff's benefits under the Workers' Compensation Act; the parties' dispute as to the extent of plaintiff's disability and defendants' liability was ripe for the Commission's hearing; defendants admitted motive to implicate the statute of limitations provision under N.C.G.S. § 97-38 was irrelevant to a determination by the Commission regarding plaintiff's disability; and joinder of all putative beneficiaries of plaintiff's potential death benefits claim was not necessary.

**3. Workers' compensation—not awarded to defendants—no abuse of discretion**

The Full Commission did not abuse its discretion in a workers' compensation case by failing to award attorney fees to defendants where the circumstances of the case, *i.e.*, that defendants, rather than plaintiff, were seeking a permanent and total disability determination, were unique.

Appeal by defendants from opinion and award entered 12 July 2011 by the North Carolina Industrial Commission. Heard in the Court of Appeals 7 February 2012.

*R. James Lore for plaintiff appellee.*

*Young Moore and Henderson P.A., by Angela Farag Craddock, for defendant appellants.*

McCULLOUGH, Judge.

Southeastern General Hospital ("Southeastern") and North Carolina Insurance Guaranty Association ("NCIGA," collectively, "defendants") appeal from an opinion and award of the Full Commission finding the evidence insufficient to prove that Irene Pait ("plaintiff") is totally and permanently disabled and declining to award defendants attorney's fees under N.C. Gen. Stat. § 97-88.1 (2011). We affirm in part, reverse in part, and remand for additional findings of fact consistent with this opinion.

## I. Background

Plaintiff suffers from a compensable occupational lung disease resulting from her exposure to formalin in the course and scope of her employment by Southeastern on 9 March 1994. Plaintiff has been unable to return to any employment since the date of her injury, and she has been receiving weekly compensation for her compensable condition pursuant to a Form 21 Agreement approved by the Commission on 9 May 1994. Plaintiff has treated with Dr. Somnath Naik ("Dr. Naik"), a pulmonary specialist, since the date of her injury.

In September 2004, NCIGA assumed responsibility for paying plaintiff's benefits from Southeastern's original insurance carrier. After receiving and reviewing plaintiff's file, NCIGA determined that plaintiff's disability appeared to be total and permanent. Accordingly, in August 2006, NCIGA proffered to plaintiff a Form 26 Agreement stipulating to her entitlement to total and permanent disability compensation. Plaintiff refused the Form 26 Agreement.

On 30 October 2006, defendants filed a Form 33 Request that Claim be Assigned for Hearing, requesting the Commission to convene a hearing for the purpose of determining the extent of plaintiff's disability. The matter was initially set for hearing on 20 February 2008.

On 31 January 2008, plaintiff filed a motion to dismiss defendants' hearing request. On 5 February 2008, Deputy Commissioner Robert J. Harris ("Deputy Commissioner Harris") entered an order denying plaintiff's motion to dismiss. On 14 February 2008, plaintiff appealed Deputy Commissioner Harris' order to the Full Commission. On 14 March 2008, the Full Commission denied plaintiff's appeal as inter-

locutory. On 20 March 2008, plaintiff filed a motion requesting that the Full Commission reconsider its 14 March 2008 order, but the Commission denied plaintiff's motion on 16 May 2008. Plaintiff appealed the Commission's 16 May 2008 order to this Court, and we likewise dismissed plaintiff's appeal as interlocutory. *Pait v. Southeastern Reg'l Hosp.*, No. COA08-955 (N.C. Ct. App. Apr. 21, 2009) (unpublished opinion).

Following plaintiff's unsuccessful appeal to this Court, the case was ordered to be returned to the docket for hearing. On 17 February 2010, plaintiff filed a motion to reconsider the order setting the case on the docket, which was denied by Commission Chair Pamela Young ("Chair Young") on 23 April 2010. Plaintiff then filed a motion to reconsider Deputy Commissioner Harris' 5 February 2008 order and to suspend the hearing on 30 June 2010. Plaintiff's motion was again denied by order on 19 July 2010.

A hearing in the matter was held before Deputy Commissioner John DeLuca ("Deputy Commissioner DeLuca") on 28 July 2010. At the hearing, plaintiff's medical records and the deposition testimony of Dr. Naik, plaintiff's treating physician, were received into evidence. In addition, defendants admitted their primary motive in seeking the present hearing was to obtain a final determination of disability to trigger the running of the statute of limitations period on possible death benefits claims under N.C. Gen. Stat. § 97-38 (2011). On 29 November 2010, Deputy Commissioner DeLuca filed an opinion and award, concluding that defendants were entitled to request a hearing to determine the extent of plaintiff's disability, that plaintiff is totally and permanently disabled based on the medical evidence presented, and that both parties' requests for attorney's fees under N.C. Gen. Stat. § 97-88.1 should be denied. Both parties appealed Deputy Commissioner DeLuca's opinion and award to the Full Commission.

On 12 July 2011, the Full Commission entered its opinion and award reversing the Deputy Commissioner's opinion and award by denying defendants' request to have plaintiff determined to be both totally and permanently disabled. The Full Commission also denied both parties' requests for attorney's fees under N.C. Gen. Stat. § 97-88.1. Defendants timely appealed from the Commission's opinion and award to this Court on 3 August 2011.

## II.  Standard of Review

"Appellate review of an award from the Industrial Commission is generally limited to two issues: (1) whether the findings of fact are

supported by competent evidence, and (2) whether the conclusions of law are justified by the findings of fact." *Clark v. Wal-Mart*, 360 N.C. 41, 43, 619 S.E.2d 491, 492 (2005). The Commission's findings of fact are conclusive on appeal if supported by any competent evidence. *Barbour v. Regis Corp.*, 167 N.C. App. 449, 454, 606 S.E.2d 119, 124 (2004). "The 'Commission is the sole judge of the credibility of the witnesses and the [evidentiary] weight to be given their testimony[;]' however, 'findings of fact by the Commission may be set aside on appeal when there is a complete lack of competent evidence to support them.' " *Fonville v. General Motors Corp.*, 200 N.C. App. 267, 269-70, 683 S.E.2d 445, 447 (2009) (alterations in original) (quoting *Young v. Hickory Bus. Furn.*, 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000)). We review the Commission's conclusions of law *de novo*. *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 701 (2004).

III. Defendants' Challenge to the Commission's Findings of Fact

[1] On appeal, defendants argue the Commission erred in its Findings of Fact numbers 8 and 9:

> 8. With respect to whether plaintiff is permanently and totally disabled, Dr. Somnath Naik, a pulmonary medicine physician, who has been treating plaintiff since 1992, agreed that he could not say to a reasonable degree of medical certainty that plaintiff's condition is going to be permanent into the future because of the possibility that new drugs may come on the market to treat her condition. He acknowledged that he was aware that there are "certain drugs in the pipeline, including genetic drugs," that may become available to improve plaintiff's condition. He opined, however, that currently plaintiff is totally disabled as a result of her compensable condition.

> 9. The Full Commission finds, based upon the greater weight of the evidence, that plaintiff's current incapacity to earn wages is total; however, the evidence is insufficient to prove that plaintiff is permanently and totally disabled.

Defendants argue these two findings of fact are not supported by competent evidence in the record, and therefore do not support the Commission's conclusion to deny defendants' request to determine that plaintiff is permanently and totally disabled. We agree.

In reviewing all the evidence in the record, we find no competent evidence to support the Commission's findings of fact. As the Commission's findings state, there is one instance in the deposition testimony

where Dr. Naik "agreed that he could not say to a reasonable degree of medical certainty that plaintiff's condition is going to be permanent into the future because of the possibility that new drugs may come on the market to treat her condition." Specifically, on cross-examination at the close of Dr. Naik's deposition, the following exchange occurred:

Q. [I]s it true that you are aware that other drugs are currently being developed by drug manufacturers and scientists to treat the condition that [plaintiff] needs?

A. There are some—they are working on genes and all that in genetic hospital treatment and modulation. But it's all under research, and nothing is definite at this time whether it's going to be helpful or not.

Q. Would it be fair to say that if one of these drugs comes to fruition and comes on the market, it could be a drug that dramatically improves her condition?

. . . .

A. I don't know. I don't know until I see the drug. We don't know what is going to come, what is going to be off label. . . .

[A]nything which could prevent further inflammation or regress inflammation she already had would be helpful.

. . . .

Q. Would it be fair to say that if a genetic based drug comes on the market, that you cannot exclude the fact that it would dramatically improve her condition?

. . . .

A. I—as I said, I do not know what is going to come and how effective it will be. We can always keep that from the back when that happens.

Q. Would you concede that that is the intent of the drug manufacturers is to develop a genetic-based drug which would be pointed towards improving conditions of patients such as [plaintiff]?

A. That is the intent of any new drug, or any drug.

Q. So in the sense when you say that her condition is permanent, would you not have to concede that that statement has to be qualified by the potential for a drug to come on the market during her lifetime which dramatically improves her condition?

. . . .

A. The condition is permanent in the sense she has not improved as we expect in terms of medical expectations. So when her condition has not improved, we call the condition as permanent. It's a term. It can change as new medical breakthrough occurs. And what is permanent today may not be permanent tomorrow.

Q. So when you say "permanent," you're looking back in time over the years that you've seen her, but you cannot say to a reasonable degree of medical certainty that it's going to be permanent into the future because the possibility of new drugs may come on the market; is that fair?

A. Yeah, I agree with that.

As the foregoing exchange reveals, Dr. Naik's testimony as to the "possibility" of future drugs which are currently being developed in laboratories and their potential to improve plaintiff's condition is based entirely on speculation. Dr. Naik even states during the exchange that he would have to "see" any drug that may come onto the market and that "nothing is definite at this time whether it's going to be helpful or not." Although he acknowledged the potential exists, Dr. Naik expressly stated that he doesn't know what type of drug will come out, how effective the drug will be, or if the drug could help improve plaintiff's condition.

Findings regarding the nature of an occupational disease, such as plaintiff's lung condition, " 'must ordinarily be based upon expert medical testimony.' " *Nix v. Collins & Aikman Co.*, 151 N.C. App. 438, 443, 566 S.E.2d 176, 179 (2002) (quoting *Norris v. Drexel Heritage Furnishings, Inc.*, 139 N.C. App. 620, 623, 534 S.E.2d 259, 262 (2000)). Further, it is well-settled that:

> In cases involving complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury. However, when such expert opinion testimony is based merely upon speculation and conjecture, . . . it is not suf-

ficiently reliable to qualify as competent evidence on issues of medical causation. [T]he evidence must be such as to take the case out of the realm of conjecture and remote possibility[.]

*Holley v. ACTS, Inc.*, 357 N.C. 228, 232, 581 S.E.2d 750, 753 (2003) (emphasis added) (alterations in original) (internal quotation marks and citations omitted); *see also Rogers v. Lowe's Home Improvement*, 169 N.C. App. 759, 765, 612 S.E.2d 143 (2005) ("Expert opinion based merely upon speculation and conjecture does not constitute competent evidence of causation in cases involving complex medical issues beyond the ken of laypersons." (internal quotation marks and citation omitted)).

Here, the testimony, and the Commission's resulting findings of fact, reveal that any perceived "temporary" nature of plaintiff's disability is based entirely on speculation that plaintiff's lung condition could possibly improve in the future as a result of new drugs that may come onto the market. Such speculative expert testimony cannot support a finding that plaintiff's disability as a result of her occupational lung disease is temporary.

Furthermore, "the Commission must concern itself with the claimant's level of disability as it exists prior to and at the time of hearing." *Carothers v. Ti-Caro*, 83 N.C. App. 301, 306, 350 S.E.2d 95, 98 (1986). "Nothing in the statute contemplates or authorizes an anticipatory finding by the Commission." *Id.* Again, the Commission's findings of fact, in addition to the testimony relied upon by the Commission, concerns only the possibility of future circumstances and does not address the circumstances of plaintiff's condition and available medical treatment as they presently exist. In fact, the foregoing testimony expressly states plaintiff's condition is permanent given that she has not improved medically "looking back in time over the years that [Dr. Naik has] seen her." Accordingly, the Commission's Finding of Fact number 8, based entirely on speculative and anticipatory testimony, is not supported by any competent evidence and therefore is erroneous as a matter of law.

Rather, the evidence in the record in its entirety supports a finding that plaintiff's condition is permanent. On 20 October 1994, Dr. Naik opined that plaintiff was "permanently disabled." Dr. Naik again opined on 12 July 1995 that plaintiff was "permanently disabled." On 8 December 1995, Dr. Naik informed Southeastern's prior insurance carrier of his opinion that plaintiff is not "a candidate for any kind of employment either now or in the future[.]" On 9 December 1996, Dr.

Naik again informed Southeastern's prior insurance carrier that in his opinion, "[plaintiff] is permanently and totally disabled," and that he "do[es] not expect her to go back to work in the future." Finally, on 30 January 1997, a second physician, Dr. Allen Hayes, indicated his concurrence with Dr. Naik's assessment and opined that plaintiff would not return to "full-time gainful employment."

In addition, Dr. Naik testified in his deposition, prior to the foregoing exchange, that plaintiff remains unemployable as a result of her formalin exposure, that she cannot leave her house, and that she has remained unemployable since 1995, consistent with his opinions noted in plaintiff's medical records. Dr. Naik further testified unequivocally that plaintiff is "permanently disabled to work." Dr. Naik testified that on 8 December 2005, he found plaintiff's condition was not going to improve so that she could return to work in the future, and that by the end of 2000 he believed plaintiff "was not going to get any better than she was then. She's going to have some kind of problems all the time." Finally, in response to questioning, Dr. Naik agreed that "to a reasonable degree of medical certainty" his opinion is that plaintiff is "permanently and totally disabled from any type of employment." Accordingly, the Commission's Finding of Fact number 9 that the evidence is insufficient to establish that plaintiff is permanently and totally disabled is completely unsupported by the record. Aside from the speculative and anticipatory testimony cited by the Commission, there is absolutely no competent evidence in the record to support a determination that plaintiff's condition continues to be temporary in nature. Those findings of fact, therefore, cannot stand. Furthermore, because the Commission's conclusion of law that "the evidence does not prove that plaintiff is permanently and totally disabled as a result of her compensable injury" is not supported by any findings of fact nor any competent evidence in the record, it is in error as a matter of law.

IV.  Issues Raised by Plaintiff

[2] We next address plaintiff's argument that alternative legal grounds require the Commission, and this Court, to reach the same effective result of denying defendants' request to have plaintiff determined totally and permanently disabled. Plaintiff essentially contends the Commission erred in permitting a hearing on this matter, raising three reasons why the Commission should not have conducted this hearing. First, plaintiff argues that defendants lack standing to request a hearing on this issue, contending that it is her right to choose the appropriate remedy for her disability under the Workers'

Compensation Act, and therefore, defendants cannot force her to accept compensation for total and permanent disability. Second, plaintiff argues this issue is not a valid dispute under the Workers' Compensation Act because the parties reached an agreement as to plaintiff's benefits following her injury and all of plaintiff's compensation payments are current. Finally, plaintiff points to defendants' admitted motive in requesting the present hearing and argues that given this motive, the hearing requested by defendants requires the joinder of all putative beneficiaries of a potential death benefits claim in the event plaintiff dies as a result of her compensable injury. Plaintiff argues that, because joinder of these "necessary parties" is impossible while plaintiff is still alive, the Commission cannot properly convene the hearing requested by defendants. We address each of plaintiff's arguments in turn.

### A. Standing of Defendants to Request Hearing

Under N.C. Gen. Stat. § 97-83 (2011), "upon the arising of a dispute under [the Workers' Compensation Act], either party may make application to the Commission for a hearing in regard to the matters at issue, and for a ruling thereon." *Id.* (emphasis added). In *Polk v. Nationwide Recyclers, Inc.*, 192 N.C. App. 211, 664 S.E.2d 619 (2008), this Court considered the same argument raised by plaintiff in the present case, "that defendant cannot force her to elect a remedy for her disability." *Id.* at 216, 664 S.E.2d at 623. In *Polk*, we held this reasoning was flawed because pursuant to N.C. Gen. Stat. § 97-83, as set forth above, an employer or insurance carrier is "permitted to request a hearing as to [a] plaintiff's benefits under the Act in the first place." *Id.*

Moreover, in *Effingham v. Kroger Co.*, 149 N.C. App. 105, 561 S.E.2d 287 (2002), this Court expressly held that once an injured employee reaches maximum medical improvement, "*either party* can seek a determination of permanent loss of wage-earning capacity." *Id.* at 114, 561 S.E.2d at 294 (emphasis added). Here, the dispute between the parties concerns only the proper classification of the extent of plaintiff's disability and the benefits owed to her therefor, and the record reveals some evidence that plaintiff's condition had reached maximum medical improvement prior to defendants' requesting the present hearing. Because the present dispute is a generalized dispute as to an injured worker's benefits, and given the evidence in the record, our decisions in *Polk* and *Effingham* control. Thus, we conclude defendants here had proper standing to request the present hearing under N.C. Gen. Stat. § 97-83.

### B.  Ripeness and Case or Controversy

In the present case, defendants filed their hearing request to seek a determination by the Commission as to the extent of plaintiff's disability and their liability therefor. As implied in the previous discussion, a dispute regarding an injured worker's benefits is a valid case or controversy to be determined by the Commission. *See Polk,* 192 N.C. App. at 216, 664 S.E.2d at 623. The fact that defendants are current in their compensation payments to plaintiff has no bearing on the issue of plaintiff's continued disability and the extent of that disability. To the contrary, as we have already stated, once an injured employee reaches maximum medical improvement, "either party can seek a determination of permanent loss of wage-earning capacity." *Effingham,* 149 N.C. App. at 114, 561 S.E.2d at 294. As we noted above, there is competent evidence in the record indicating that plaintiff's condition had reached maximum medical improvement prior to defendants' requesting this hearing. Accordingly, the parties' dispute as to the extent of plaintiff's disability and defendants' liability therefor was ripe for the Commission's hearing.

Further, plaintiff's argument that a death benefits claim is not ripe because plaintiff is still alive is inapposite, as defendants did not seek, nor did the Commission purport to hear, any issues relating to plaintiff's beneficiaries' putative rights under N.C. Gen. Stat. § 97-38.

### C.  Joinder of Necessary Parties

We first note that the hearing conducted by the Commission in the present case concerns only plaintiff's condition as a result of her compensable injury. Defendants' motives for seeking the hearing are irrelevant to a determination by the Commission regarding plaintiff's disability for purposes of awarding benefits under the Workers' Compensation Act. Rather, a party's motives in requesting a hearing is more properly considered in making a determination as to whether the party requesting the hearing lacked reasonable grounds for purposes of awarding attorney's fees under N.C. Gen. Stat. § 97-88.1. *See, e.g., Meares v. Dana Corp.,* 193 N.C. App. 86, 94-95, 666 S.E.2d 819, 825-26 (2008). Nonetheless, plaintiff argues that, because defendants admitted their motive to implicate the statute of limitations provision under N.C. Gen. Stat. § 97-38, all putative beneficiaries of a death benefits claim under that statute are necessary parties that must be joined in order for the Commission to properly conduct the hearing in this matter.

Death benefits under section 97-38 are a statutory right given to beneficiaries of an injured worker whose death results from a compensable injury or occupational disease. The statute imposes express time limitations on the accrual of death benefits claims. Specifically, under section 97-38, an employer must pay death benefits to an injured worker's beneficiaries, as defined under that section, only "[i]f death results proximately from [the] compensable injury or occupational disease and within six years thereafter, or within two years of the final determination of disability, whichever is later[.]" *Id.* When the parties are seeking a determination of an injured worker's disability status, the death benefits statute is not in issue, even in cases where a defendant's motive is to implicate that statute in the future. Rather, the purpose of a hearing regarding a determination of an injured worker's disability and the extent of that disability is to determine the rights of the plaintiff to receive compensation for his or her injury and the liabilities of the employer and its insurance carrier to pay the compensation owed for the injury. *See Chaisson v. Simpson*, 195 N.C. App. 463, 484, 673 S.E.2d 149, 164 (2009) (" '[T]he policy behind North Carolina's Workers' Compensation Act . . . [is] to provide a swift and certain remedy to an injured worker and to ensure a limited and determinate liability for employers.' " (alterations and omission in original) (quoting *Matthews v. Charlotte-Mecklenburg Hosp. Auth.*, 132 N.C. App. 11, 16-17, 510 S.E.2d 388, 393 (1999))).

Plaintiff cites *Wray v. Woolen Mills*, 205 N.C. 782, 172 S.E. 487 (1934), in support of her contention that an injured worker's beneficiaries cannot be bound by the type of hearing requested by defendants in the present case. However, a review of the facts in *Wray* and the holding applicable to those facts reveals a contrary result. In *Wray*, a worker was injured in the course and scope of his employment on 28 November 1930. *Id.* at 782, 172 S.E. at 488. Under the Workers' Compensation Act in effect at that time, a claim for worker's compensation benefits must have been filed within one year of the accident. *Id.* at 783, 172 S.E. at 488. However, the injured worker filed his claim on 12 April 1932, failing to file within the time limits prescribed by the statute. *Id.* Thereafter, the injured worker died on 24 August 1932, and the injured worker's dependent mother filed a death benefits claim under the Workers' Compensation Act immediately thereafter. *Id.* Evidence produced at the hearing on the death benefits claim showed the injured worker's death was the proximate result of his injury at work. *Id.* at 782, 784, 172 S.E. at 488-89. Accordingly, the Commission awarded death benefits to the dependent mother under the Act. *Id.* at 783, 172 S.E. at 488.

On appeal in *Wray*, the defendant employer argued the claim for death benefits was in effect an amendment to the original claim for worker's compensation benefits filed by the injured employee, and therefore, the claim should be barred under the statutory time limitations for filing worker's compensation claims. *Id.* However, our Supreme Court upheld the Commission, holding the death benefits claim was a distinct claim of the beneficiaries and was timely filed under the Act. *Id.* at 783-84, 172 S.E. at 488. Specifically, our Supreme Court stated:

> [D]uring [the injured worker's] lifetime his dependents were not parties in interest to the proceeding he brought for the enforcement of his claim. Their right to compensation did not arise until his death and their cause of action was not affected by anything he did, not even to the extent of a reduction of their compensation by payments sought by him, because no such payments were made. The basis of their claim was an original right which was enforceable only after his death.

*Id.* Accordingly, *Wray* holds that a death benefits claim under the Workers' Compensation Act is a distinct claim to those beneficiaries upon the death of the injured worker. Notably, because the death benefits claim does not arise until the injured employee's death, as plaintiff is aware, the rights of the beneficiaries under the Act are not implicated until the injured employee's death. *See Goins v. Cone Mills Corp.*, 90 N.C. App. 90, 93-94, 367 S.E.2d 335, 337 (1988). Moreover, the language in *Wray* specifically states that beneficiaries are "not parties in interest" to an injured worker's claim for benefits, which is the subject of the hearing requested by defendants in the present case. *Wray*, 205 N.C. at 783, 172 S.E. at 488.

In *Wall v. Sneed*, 13 N.C. App. 719, 187 S.E.2d 454 (1972), cited by plaintiff, this Court quoted our Supreme Court in defining a necessary party to a pending action: " 'A sound criterion for deciding whether particular persons must be joined in litigation between others appears in this definition: Necessary parties are those persons who have *rights* which must be ascertained and settled before the rights of the parties to the suit can be determined.' " *Id.* at 724, 187 S.E.2d at 457 (emphasis added) (quoting *Assurance Society v. Basnight*, 234 N.C. 347, 352, 67 S.E.2d 390, 395 (1951)). Furthermore:

> [A] person must be joined as a party to an action if that person is "united in interest" with another party to the action. A person is "united in interest" with another party when that per-

son's presence is necessary in order for the court to determine the claim before it without prejudicing the rights of a party before it or the *rights of others* not before the court.

*Ludwig v. Hart,* 40 N.C. App. 188, 190, 252 S.E.2d 270, 272 (1979) (emphasis added). Under these definitions, the putative beneficiaries of a death benefits claim are not "necessary parties" to a determination by the Commission as to the status of an injured worker's disability. These beneficiaries have no rights under the Act until the injured employee's death, and they are certainly not united in interest with the injured employee regarding the employee's lifetime worker's compensation benefits, as held by our Supreme Court in *Wray.* *See Booker v. Duke Medical Center,* 297 N.C. 458, 466-67, 256 S.E.2d 189, 195 (1979) (beneficiaries' right to compensation under Workers' Compensation Act is separate and distinct from rights of the injured employee and does not arise until injured employee's death).

The language implicated by the death benefits statute simply serves as a statute of limitations for those claims. *Kelly v. Duke Univ.,* 190 N.C. App. 733, 737, 661 S.E.2d 745, 747-48 (2008). When a dispute arises as to an injured worker's disability, the Commission may properly consider and determine the permanency of the injured worker's disability, without regard to any possible claim of death benefits by the putative beneficiaries. Were we to hold otherwise, the Commission would be required to ascertain and join as parties the putative beneficiaries of an injured worker any time the Commission considers a determination of total and permanent disability. As plaintiff concedes, all of an injured worker's putative beneficiaries under the Act are not ascertainable until the injured worker's death. Thus, the Commission could never make a final determination of disability in worker's compensation cases. Plaintiff's proposed interpretation of our laws, therefore, would lead to absurd results, contrary to the manifest purpose of our Legislature and the reason and purpose of the statutory language at issue. *Chaisson,* 195 N.C. App. at 479, 673 S.E.2d at 161.

Our Supreme Court has expressed the "overriding policy" of section 97-38 is to "provid[e] death benefits, at a fixed rate for a fixed period, to the individual dependents of an employee who has met with *an untimely and unexpected demise." Deese v. Lawn and Tree Expert Co.,* 306 N.C. 275, 281, 293 S.E.2d 140, 145 (1982) (emphasis added). Indeed, our Supreme Court noted that "it was never contemplated that the Workers' Compensation Act would . . . be the equivalent of general accident, health or *life insurance.* Instead, this

legislation was enacted to afford certain and reasonable relief against *peculiar hardship.*" *Id.* at 281-82, 293 S.E.2d at 145 (emphasis added) (citations omitted). Plaintiff's argument that any final determination of an injured worker's disability by the Commission requires joinder of all putative beneficiaries of a death benefits claim is without merit.

## V. Attorney's Fees

[3] Finally, defendants argue the Commission abused its discretion in failing to award attorney's fees under N.C. Gen. Stat. § 97-88.1. Defendants argue plaintiff showed no reasonable grounds for continuing to dispute defendants' request for a hearing on the extent of her disability and for continuing to dispute the permanent nature of her disability.

N.C. Gen. Stat. § 97-88.1 provides the Commission with discretionary authority to assess costs and attorney's fees for prosecuting or defending a hearing without reasonable grounds. *Id.* ("If the Industrial Commission shall determine that any hearing has been brought, prosecuted, or defended without reasonable ground, it may assess the whole cost of the proceedings including reasonable fees for defendant's attorney or plaintiff's attorney upon the party who has brought or defended them."). "Review of the Commission's award or denial of attorney's fees is limited and will not be overturned absent an abuse of discretion." *Stevenson v. Noel Williams Masonry, Inc.,* 148 N.C. App. 90, 94, 557 S.E.2d 554, 557 (2001); *see also Sprinkle v. Lilly Indus., Inc.,* 193 N.C. App. 694, 702, 668 S.E.2d 378, 383 (2008) (" '[T]he Commission's determination [of matters within its sound discretion] will not be reviewed on appeal absent a showing of manifest abuse of discretion.' " (alterations in original) (quoting *Lynch v. M.B. Kahn Constr. Co.,* 41 N.C. App. 127, 131, 254 S.E.2d 236, 238 (1979))). "An abuse of discretion arises when a decision is 'manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.' " *Stevenson,* 148 N.C. App. at 94, 557 S.E.2d at 557 (quoting *State v. Hennis,* 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988)).

Although the record evidence plainly indicates plaintiff's condition is permanent and total, given the unique circumstances of this case, *i.e.,* that defendants, rather than plaintiff, are seeking a permanent and total disability determination, we hold the Commission did not abuse its discretion in refusing to award attorney's fees to either party under these facts. *See Meares,* 193 N.C. App. at 95, 666 S.E.2d at 826 ("[I]t is somewhat unusual for the *defendants* in a workers'

compensation case to request that an employee be declared permanently and totally disabled—normally the defendants oppose such a determination.").

## VI. Conclusion

We hold the Commission's findings of fact and conclusion of law as to the temporary nature of plaintiff's disability is not supported by any competent evidence in the record, and plaintiff's alternative legal grounds for upholding the Commission's award are without merit. We must, therefore, reverse that portion of the Commission's opinion and award denying defendants' request to have plaintiff determined to be both totally and permanently disabled. We remand the case to the Commission for entry of additional findings of fact as to plaintiff's alleged permanent disability consistent with this opinion.

Because we discern no abuse of discretion in the Commission's denial of attorney's fees to both parties, we affirm that portion of the Commission's opinion and award denying both parties' requests for attorney's fees under N.C. Gen. Stat. § 97-88.1.

Affirmed in part; reversed in part; and remanded.

Judges HUNTER (Robert C.) and THIGPEN concur.