LISA LEONARD ROSE, INDIVIDUALLY, AND AS ADMINISTRATRIX OF THE ESTATE OF VIRGIL LEE ROSE, PLAINTIFF, v. ISENHOUR BRICK & TILE CO., INC., DEFENDANT

No. COA94-1118

(Filed 19 September 1995)

## 1. Workers' Compensation § 62 (NCI4th)— employer engaged in misconduct knowing it was substantially certain to cause injury or death—insufficiency of evidence

Plaintiff's forecast of evidence was insufficient to show the existence of a genuine issue of material fact regarding whether defendant employer engaged in misconduct knowing it was substantially certain to cause serious injury or death where defendant left a brick setting machine in the automatic rather than the manual mode while decedent was cleaning the spreader table; the carriage head of the setting machine descended and crushed decedent's head and shoulders; defendant had never been cited for a violation relating to the carriage head on this machine or for its use of weights and wires to hold down the switches controlling the carriage head and spreader table when employees needed to clean the table; no employees had previously been injured by the carriage head; no regulations required defendant to equip the carriage head with safety guards; and there was no showing that safety guards for this type of machine were utilized by other brick manufacturers in the industry.

**Am Jur 2d, Workers' Compensation §§ 75-87.**

## 2. Discovery and Depositions § 67 (NCI4th)— failure to impose discovery sanctions—no abuse of discretion

In an action to recover for the death of plaintiff's husband who was killed while working on defendant's brick production line, defendant's failure to disclose all prior injuries on brick setting machines in response to plaintiff's interrogatories and defendant's failure to produce loss prevention documents which outlined safety recommendations of defendant's insurer based on inspections of the premises were abuses of discovery which would support the imposition of sanctions; however, the trial court did not abuse its discretion in declining to impose sanctions but instead ordering defendant to produce documents responsive to plaintiff's discovery requests for an *in camera* inspection.

ROSE v. ISENHOUR BRICK & TILE CO.

[120 N.C. App. 235 (1995)]

**Am Jur 2d, Depositions and Discovery §§ 373 et seq.**

Judge WYNN dissenting.

Appeal by plaintiff from order entered 23 May 1994 by Judge William H. Helms in Rowan County Superior Court. Heard in the Court of Appeals 7 June 1995.

Defendant is a Rowan County corporation which operates a brick production facility. On 22 March 1990, Virgil Lee Rose, an employee of defendant, was operating brick setting machine number three. His head and shoulders were caught between the carriage "head" of the machine and the spreader table and crushed. On the following day, Mr. Rose (hereinafter decedent) died as a result of his injuries.

Defendant has three setting machines manufactured by Pearne & Lacey, which are referred to in the industry as "dinosaurs." Brick setting machine number three was manufactured by Auto Systems and is smaller than the "dinosaurs." A brick setting machine moves green uncured brick, known as "slugs," from a spreader table and transfers the slugs to a kiln car. The slugs are picked up from the spreader table by a carriage head which weighs from 2000 to 3000 pounds. The head descends onto the spreader table by gravity and ascends by power. The setting machine has automatic and manual operational modes. The automatic mode is designed for use when the machine is in continuous operation without any employees within the operational area. The manual mode is utilized when it is necessary to stop any component of the machine, such as when an employee needs to remove excess clay from the spreader table.

Although the manufacturer designed the manual mode as a safety feature, defendant taught its employees to leave the machine in the automatic mode and to use weights attached to wires to hold down the spring loaded switches controlling the carriage head and the spreader table when employees needed to clean the spreader table. By leaving the machine in the automatic mode and using weights and wires, it was not necessary to interrupt the entire brick making process every time an employee needed to clean the spreader table. However, the weights and wires were known to occasionally slip off of the switches.

The North Carolina Department of Labor, Division of Occupational Safety and Health (hereinafter OSHA), investigated the 22 March 1990 accident. The investigator's report indicated that dece-

## ROSE v. ISENHOUR BRICK & TILE CO.

[120 N.C. App. 235 (1995)]

dent was cleaning the spreader table when the head of the setting machine descended and crushed his head and shoulders. The report also stated that the machine was in the automatic mode at the time of the accident. Since the accident, there have been conflicting statements as to whether or not there was a weighted wire on the spring loaded switch controlling the head at the time of the accident and, if there was a weight on the switch just prior to the accident, whether it fell off and caused the head to descend onto the spreader table. The investigator concluded that the causal factors leading to the accident included "improper use of machine controls (not operating machine according to manufacturers design) and lack of machine guards or guarding devices."

Decedent's wife, Lisa Leonard Rose (hereinafter plaintiff), individually and as administratrix of decedent's estate, sued defendant for compensatory and punitive damages. Plaintiff voluntarily dismissed her individual claim on 13 July 1993. Defendant filed its first motion for summary judgment on 24 September 1993, but it withdrew the motion on 3 December 1993. Defendant made a second motion for summary judgment on 7 April 1994 which Judge William H. Helms denied on 19 April 1994. Defendant subsequently filed a motion for reconsideration which Judge Helms granted, entering summary judgment for defendant on 23 May 1994.

Plaintiff appeals.

*Wallace & Whitley, by Mona Lisa Wallace, for plaintiff-appellant.*

*Dean & Gibson, by Rodney A. Dean and Brien D. Stockman, and by Harrell Powell, Jr., for defendant-appellee.*

EAGLES, Judge.

I.

[1] Plaintiff argues that the trial court erred in granting defendant's motion for summary judgment. Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." G.S. 1A-1, Rule 56(c). "All inferences of fact must be drawn against the movant and in favor of the non-movant." *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 63, 414 S.E.2d 339, 342 (1992)

ROSE v. ISENHOUR BRICK & TILE CO.

[120 N.C. App. 235 (1995)]

Traditionally, the Workers' Compensation Act has provided the sole remedy for an employee who was injured on the job as a result of an accident. *See Regan v. Amerimark Bldg. Products, Inc.*, 118 N.C. App. 328, 330, 454 S.E.2d 849, 851, *review denied*, 340 N.C. 359, 458 S.E.2d 189 (1995); *Mickles v. Duke Power Co.*, 115 N.C. App. 624, 627, 446 S.E.2d 369, 371, *review allowed*, 338 N.C. 311, 450 S.E.2d 488 (1994). However, in *Woodson v. Rowland*, 329 N.C. 330, 340-41, 407 S.E.2d 222, 228 (1991) (emphasis added), our Supreme Court held:

> [W]hen an employer intentionally engages in misconduct *knowing* it is substantially certain to cause serious injury or death to employees and an employee is injured or killed by that misconduct, that employee, or the personal representative of the estate in case of death, may pursue a civil action against the employer. Such misconduct is tantamount to an intentional tort, and civil actions based thereon are not barred by the exclusivity provisions of the Act.

Here, the trial court indicated in its order that it based its decision to grant summary judgment in part on our decision in *Powell v. S & G Prestress Co.*, 114 N.C. App. 319, 442 S.E.2d 143, review denied on additional issues, 338 N.C. 520, 452 S.E.2d 815 (1994). There, an employee caught his foot under the wheel of a moving crane and died after the crane traveled the length of his body and crushed him. *Powell*, 114 N.C. App. at 322, 442 S.E.2d at 145. In *Powell*, the court provided an example of the type of misconduct which satisfies the substantial certainty standard:

> A throws a bomb into B's office for the purpose of killing B. A knows that C, B's stenographer, is in the office. A has no desire to injure C, but knows that this act is substantially certain to do so. C is injured by the explosion. A is subject to liability to C for an intentional tort.

*Powell*, 114 N.C. App. at 325, 442 S.E.2d at 147, *citing* Restatement (Second) of Torts § 8A illus. 1 (1965). We stated that "[s]ubstantial certainty requires more than a mere possibility or substantial probability of serious injury or death." *Powell*, 114 N.C. App. at 325, 442 S.E.2d at 147.

Applying that standard in *Powell*, we noted that there was no specific requirement for tire guards on cranes used by the employer. *Powell*, 114 N.C. App. at 326, 442 S.E.2d at 147. While the Department of Labor had cited the employer for previous crane violations, none

ROSE v. ISENHOUR BRICK & TILE CO.

[120 N.C. App. 235 (1995)]

of the violations concerned the hazard of operating a crane in close proximity to employees and none of the employer's workers had been struck by a crane in the past. *Id.* Accordingly, we concluded that the plaintiff failed to present sufficient evidence to survive summary judgment.

We are bound by *Powell*'s articulation of the substantial certainty standard. *Matter Of Appeal From Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) (stating that a panel of the Court of Appeals is bound by a prior panel). After carefully reviewing the record, we conclude that plaintiff's case cannot withstand scrutiny under the *Powell* standard. Like the employer in *Powell* that had never been cited for a violation relating to the operation of a crane in close proximity to workers, defendant here had never been cited for a violation relating to the carriage head on machine number three or for its use of weights and wires. Furthermore, before this accident, no employees of defendant had been injured by the carriage head on machine number three and there were no specific regulations that required defendant to equip the carriage head on machine number three with safety guards. Plaintiff's forecast of evidence failed to establish that safety guards for this type of machine were utilized by other brick manufacturers in the industry. Similarly, nothing of record indicates that before the accident defendant *knew or should have known* of plaintiff's expert witness's estimate of statistical probabilities of death or serious injury in an accident involving machine number three. Accordingly, applying the *Powell* standard, we conclude that plaintiff's forecast of evidence is not sufficient to show the existence of a genuine issue of material fact regarding whether defendant engaged in misconduct *knowing* it was substantially certain to cause serious injury or death.

II.

[2] Plaintiff also argues that the trial court erred in denying plaintiff's motions for discovery sanctions. Plaintiff's original motion and two supplemental motions allege numerous discovery abuses. There are two primary areas of dispute. First, plaintiff asserts that defendant failed to disclose all prior injuries on brick setting machines in response to plaintiff's interrogatories. In defendant's answer to plaintiff's interrogatories concerning prior injuries, defendant responded that it knew of no prior injuries other than those contained in the OSHA materials which defendant had already supplied to plaintiff. Plaintiff later discovered through depositions the prior occurrence of injuries similar to decedent's injury detailed in several Industrial

Commission Form 19s. Defendant did not mention the Form 19s in its response to the interrogatories. Plaintiff argues that defendant's failure to produce the Form 19s detailing prior injuries is an abuse of the discovery process. Defendant argues that one reason it did not produce the Form 19s was its concern for the privacy rights of its employees. Defendant maintains that *every single injury* that the Plaintiff claims to have been withheld from her is listed on the OSHA 200 logs that were provided to the Plaintiff."

Second, plaintiff alleges that defendant's failure to produce loss prevention documents, which outline safety recommendations of its insurer based on inspections of the premises, was an abuse of discovery supporting the imposition of sanctions. In response to requests for accident reports and safety recommendations, defendant responded that "all non-privilege [sic] documents which are discoverable under the North Carolina Rules of Civil Procedure were contained in the OSHA exhibits, transcript, and other documents previously provided to the Plaintiff." Although defendant contends that plaintiff never served an interrogatory on defendant asking it to identify the privileged documents, the record on appeal contains defendant's response to plaintiff's 7 October 1992 letter requesting defendant to identify privileged documents.

Plaintiff filed a Motion for Discovery Sanctions followed by two supplemental motions for sanctions. Upon a hearing of these motions, the trial court in its discretion declined to impose sanctions, but instead ordered the defendant to produce "any Form 19 involving injury to any individual in the operation of any brick setting machine on defendant's premises from 1980 until 1992" as well as "any document responsive to the plaintiff's discovery requests and withheld on the basis of any privilege" for an *in camera* inspection.

Rule 37 of the North Carolina Rules of Civil Procedure grants the court discretionary power to impose sanctions for failure to comply with discovery requests. 1 G. Gray Wilson, *North Carolina Civil Procedure* § 37-1 (1989). Not every abuse of discovery merits imposition of punitive sanctions. It is well-settled that "Rule 37 allowing the trial court to impose sanctions is flexible, and a 'broad discretion must be given to the trial judge with regard to sanctions.' " *Am. Tel. & Tel. Co. v. Griffin*, 39 N.C. App. 721, 727, 251 S.E.2d 885, 888, *review denied*, 297 N.C. 304, 254 S.E.2d 921 (1979), *quoting* 8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2284 (1970). Our Supreme Court has stated that "[a] ruling committed to a

trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). While the abuse of discovery rules here would support the imposition of sanctions, we hold that on this record the trial court did not abuse its discretion in declining to impose sanctions.

Affirmed.

Judge MARTIN, MARK D., concurs.

Judge WYNN dissents.

Judge WYNN dissenting.

The majority correctly recognizes that this case is before this Court following a grant of summary judgment in favor of defendant, and thus all inferences of fact must be drawn against the movant, and in favor of the nonmovant. *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 63, 414 S.E.2d 339, 342 (1992). The majority also correctly states that our Supreme Court in *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991) held that a plaintiff may maintain a civil action in addition to a Worker's Compensation claim when an employer intentionally engages in misconduct knowing it is *substantially certain* to cause serious injury or death to employees, and an employee is in fact injured or killed. *Id.*

As in *Woodson*, the question before this Court is: whether the forecast of evidence is sufficient to show that defendant intentionally engaged in misconduct knowing it was substantially certain to cause serious injury or death. *Woodson*, 329 N.C. at 340, 407 S.E.2d 222, 228 (1991). With the above in mind, I turn to the facts of the case *sub judice*.

On 22 March 1990, Virgil Lee Rose, an employee of defendant, was killed when his head and shoulders were caught between the carriage head of the brick setting machine he was operating, and the spreader table. The machine crushed his head.

The brick setting machine has automatic and manual operation modes. The automatic mode is designed for use when the machine is being used without any employees in the operational area. The manual mode was designed to be used when it is necessary to stop part of

the machine from operating, such as when an employee needs to remove excess clay from the spreader. The decedent was attempting to remove excess clay out of the spreader table when he was killed.

Instead of allowing employees to set the machine in manual mode while an employee cleans the table, as contemplated by the manufacturer, defendant taught its employees to leave the machine in automatic mode, and thus continuously running. Weights and wires were used to hold down the spring loaded switches to keep the machine running. These weights and wires had fallen off of the switches on prior occasions, and the defendant used duct tape in an attempt to prevent the wires and weights from slipping. There is a dispute in the record as to whether there was a weighted wire on the switch which controlled the head of the machine at the time of the accident, and if there was a weight on the switch, whether it fell off and caused the head of the machine to descend on the spreader table.

The North Carolina Department of Labor, Division of Occupational Safety and Health (OSHA) investigated the 22 March 1990 death of Virgil Lee Rose. The investigator's report stated that the machine was in automatic mode at the time of the accident, contrary to the manufacturer's instructions on how to use the machine, but consistent with the defendant's instructions. The investigator cited a failure to operate the machine according to the manufacturer's design as a causal factor leading to the decedent's death.

In addition, plaintiff's expert, Dr. George W. Pearsall, stated in his deposition that given the manner in which the machine was being operated, the number of times that the employees were exposed to the hazards per day, and the time that the defendant had operated the machine under the conditions present, the probability of death or serious injury was between 77.3 and 93.1 percent.

Reviewing the above facts in the light most favorable to the plaintiff, I conclude that the plaintiff's forecast of the evidence sufficiently raises an issue of fact as to whether the defendant knew that it was substantially certain that death or serious injury would result from the manner in which the defendant ordered the machine to be operated.

For the foregoing reasons, I respectfully dissent. *See also, Powell v. S & G Prestress Co.*, 114 N.C. App. 319, 442 S.E.2d 143 (1994) (Wynn, J., *dissenting*).