MARY FRANCES POWE, Employee, Plaintiff

v.

CENTERPOINT HUMAN SERVICES, Employer

AND

BRENTWOOD SERVICES, Carrier, Defendants

No. COA12-849

Filed 2 April 2013

1. **Appeal and Error—prior appeals—previous dispositions**

     Arguments in the third appeal of a workers' compensation action that disregarded the previous disposition of the case were without merit.

2. **Workers' Compensation—contempt—failure to provide medical treatment—discovery sanction—not applicable**

POWE v. CENTERPOINT HUMAN SERVS.

[226 N.C. App. 256 (2013)]

The Industrial Commission did not err in a workers' compensation case because it did not hold defendants in contempt under N.C.G.S. § 1A-1, Rule 37(b)(2) for allegedly failing to provide plaintiff with medical treatment pursuant to an order of the Commission. That rule is limited to remedying those instances in which a party fails to make discovery or comply with discovery orders during pretrial proceedings and was not applicable here.

3. **Workers' Compensation—findings—supported by the evidence**

An argument by the plaintiff in a workers' compensation case that the Industrial Commission's findings were not supported by the evidence was overruled where plaintiff based her argument on a trifling disagreement with how the Commission interpreted the evidence in the record, not a lack of true evidentiary support.

4. **Workers' Compensation—disability—effect of temporary payments—vocational rehab—refusal to cooperate**

A workers' compensation case was remanded for a determination by the Commission as to whether plaintiff was disabled under *Russell v. Lowes Prod. Distrib.*, 108 N.C. App. 762. The Commission improperly or accidentally converted defendants' payment of temporary total disability benefits into a wholly unsupported stipulation that plaintiff was totally disabled during the payment periods, and seemingly focused on the vocational rehabilitation issue to the exclusion of the disability issue. The impact of an employee's refusal to cooperate with vocational rehabilitation services on the employee's right to indemnity compensation arises only after she meets her burden of establishing disability.

5. **Workers' Compensation—findings—continued rehab beneficial—supporting evidence sufficient**

In a case decided on other grounds, the Industrial Commission's finding in a workers' compensation case that plaintiff would benefit from continued rehabilitation was based on competent evidence. Though the evidence was, at best, minimal, it was competent to support the Commission's findings of fact under the applicable deferential standard.

Appeal by Plaintiff and Defendants from amended opinion and award entered 30 May 2012 by the North Carolina Industrial Commission. Heard in the Court of Appeals 28 November 2012.

*Law Offices of Kathleen G. Sumner, by Kathleen G. Sumner, for Plaintiff.*

*Rudisill White & Kaplan, P.L.L.C., by Stephen Kushner, for Defendants.*

STEPHENS, Judge.

## Background

Mary Frances Powe ("Plaintiff") and Centerpoint Human Services ("Centerpoint") along with Brentwood Services (collectively, "Defendants") appeal from an opinion and award entered by the Industrial Commission ("the Commission"), which reinstated Plaintiff's temporary total disability compensation at the rate of $461.36 per week, back-dated to 23 February 2008. That opinion also awarded attorneys' fees and the right to designate a board-certified neurosurgeon or pain management physician of Plaintiff's choosing to provide medical treatment for her compensable injuries. The Commission denied Plaintiff's request for temporary total disability benefits accrued before 23 February 2008 on a finding that Plaintiff had not substantially complied with vocational rehabilitation services between 22 June 2006 and 23 February 2008, a period of approximately one year and eight months.

This is the third time this case has made its way to this Court in twice as many years. Issues surrounding Plaintiff's interaction with various vocational rehabilitation professionals have permeated each appeal, including the present one. The underlying facts and procedural history have not changed, are described in detail in the two previous opinions of this Court, and are not repeated here. Instead, we limit our discussion to the developments which led to this appeal following remand by the second panel.[1]

In *Powe II*, we determined that "the Commission made its findings of fact under a misapprehension of law." *Powe II,* __ N.C. App. at __, 715 S.E.2d at 304. As a result, we remanded the case to the Commission and directed it to determine whether Plaintiff "*substantially compl[ied]* with [vocational] services and [did] *not significantly interfere[]* with the

---

1. *See Powe v. Centerpoint Human Servs.,* __ N.C. App. __, 715 S.E.2d 296 (2011), *disc. rev. denied,* __ N.C. __, 721 S.E.2d 230 (2012) [hereinafter *Powe II*]; *Powe v. Centerpoint Human Servs.,* 183 N.C. App. 300, 644 S.E.2d 269 (2007) (unpublished), *available at* 2007 WL 1412447, *disc. rev. denied,* 362 N.C. 237, 659 S.E.2d 738 (2008).

vocational rehabilitation specialist's efforts to assist [her] in returning to suitable employment." *Id.* at ___, 715 S.E.2d at 304 (emphasis added).

The full Commission entered its revised opinion on 30 May 2012. In pertinent part, the Commission found: (1) Plaintiff misrepresented her true physical capacity to the vocational rehabilitation specialist, Ms. Sonya Ellington ("Ellington"), specifically with respect to Plaintiff's need to use a cane. (2) Plaintiff's attendance at the vocational rehabilitation meetings was not, in and of itself, sufficient to constitute substantial compliance with vocational rehabilitation. (3) Plaintiff "failed to make a genuine effort to locate employment and to comply with vocational rehabilitation." (4) Plaintiff "significantly interfered with []Ellington's *efforts to assist Plaintiff in returning to suitable employment*" and "willfully refused vocational rehabilitation through February 22, 2008[.]" (5) Plaintiff's vocational rehabilitation ended, in part, because Ellington felt "she had covered all of the vocational activities that she could help Plaintiff with, and she did not feel like she was effecting any change in Plaintiff." (6) Ellington's decision was not entirely the result of Plaintiff's failure to comply. (7) Plaintiff is capable of earning wages and would have benefitted from continued rehabilitation, especially computer training. Thus, "vocational rehabilitation should have continued after February 22, 2008," and Defendants should have provided it. (8) Because Defendants did not offer or provide vocational rehabilitation after 22 February 2008, Plaintiff's refusal to accept rehabilitation ceased after 22 February 2008.

Based on these findings, the Commission concluded that Plaintiff was prohibited from receiving temporary total disability benefits during the period in which she both significantly interfered and failed to substantially comply with vocational rehabilitation, from 22 June 2006 through 22 February 2008. Because her refusal ceased on 23 February 2008, the Commission concluded that Plaintiff was entitled to temporary total disability benefits "continuing at the rate of $461.36 per week" from that date onward. Both parties appealed.

*Standard of Review*

Review of an opinion and award of the Industrial Commission "is limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law. This [C]ourt's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Richardson v. Maxim Healthcare/Allegis Grp.*, 362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008) (citation and quotation

marks omitted). If supported by competent evidence, the Commission's findings are conclusive, even if the evidence might also support contrary findings. *Jones v. Candler Mobile Village*, 118 N.C. App. 719, 721, 457 S.E.2d 315, 317 (1995). "The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 433–34, 144 S.E.2d 272, 274 (1965). The Commission's conclusions of law are reviewed *de novo*. *Johnson v. Herbie's Place*, 157 N.C. App. 168, 171, 579 S.E.2d 110, 113, *disc. rev. denied*, 357 N.C. 460, 585 S.E.2d 760 (2003).

*Discussion*

*I. Plaintiff's Appeal*

**[1]** In her first argument, Plaintiff repeats two points she raised in *Powe II*: (1) that the Commission erred in refusing to reinstate temporary total disability benefits, beginning 22 June 2006, because Plaintiff "demonstrated [that] she was willing to participate with Defendants' vocational rehabilitation efforts[,] and she immediately took affirmative steps to comply"; and (2) that Plaintiff is neither "able to participate, nor required to participate with vocational rehabilitation" because she was "not under the care of an authorized physician, and . . . there was no authorized treating physician [made available] to oversee her vocational rehabilitation." These arguments are wholly without merit and improperly disregard our previous disposition of this case. As we have already resolved these issues, we will not repeat our reasoning here.

**[2]** Second, Plaintiff asserts that the Commission erred because it did not hold Defendants in contempt for failing to provide her with medical treatment. In support of that assertion, Plaintiff cites to Rule 37(b)(2)(b) of the North Carolina Rules of Civil Procedure for the proposition that the courts may sanction a party for failing to comply with any order. We are unpersuaded.

Rule 37(b) provides, in pertinent part:

(2) **Sanctions by Court in Which Action is Pending.**
— If a party . . . fails to obey an order *to provide or permit discovery*, . . . a judge . . . may make such orders in regard to the failure as are just, [including] the following:

. . .

b.   An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the party from introducing designated matters in evidence[.]

N.C. Gen. Stat. § 1A-1, Rule 37(b)(2)(b) (emphasis added). "Rule 37 . . . grants the court discretionary power to impose sanctions for failure to comply with *discovery requests.*" *Rose v. Isenhour Brick & Tile Co.*, 120 N.C. App. 235, 240, 461 S.E.2d 782, 786 (1995) (emphasis added). Rule 37 is not so broad, however, that it can be invoked whenever one party is frustrated with its adversary. The Rule is limited to remedying those instances in which a party fails to make discovery or comply with discovery orders during pre-trial proceedings. Plaintiff invokes the Rule in this case because Defendants allegedly failed to provide medical care pursuant to the Commission's opinion and award. This is not a proper use of the rule. Rule 37(b) only applies when one party fails to obey a court order compelling discovery and, therefore, is not applicable here. Because Plaintiff cites no other authority for her second argument, we affirm the Commission's denial of her motion.

**[3]** Third, Plaintiff contends that certain findings are not supported by competent evidence. We are unpersuaded. Plaintiff bases her argument on trifling disagreement with how the Commission should have interpreted the evidence in the record — not a lack of true evidentiary support. Despite Plaintiff's protestations, it is well settled that "[t]he Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony. The courts may set aside findings of fact only upon the ground they lack evidentiary support." *Anderson*, 265 N.C. at 433¬–34, 144 S.E.2d at 274. Plaintiff's mere disagreement with the Commission's findings, without more, is not sufficient to overturn a decision of the Commission as not based on competent evidence. *Cf. Holcomb v. Butler Mfg. Co.*, 158 N.C. App. 267, 273–74, 580 S.E.2d 376, 380 (2003) ("[T]he mere fact that an appellate court disagrees with the findings of the Commission is not grounds for reversal."). Accordingly, this argument is overruled.

## II. Defendants' Appeal

Defendants make two arguments on appeal: (1) that the Commission misapplied this Court's holding in *Powe II* and thereby erred in ordering the resumption of temporary total disability benefits, and (2) that the Commission erred by failing to make a determination as to Plaintiff's disability. Because a determination of whether Plaintiff is disabled and, if so, the extent to which she is disabled, is essential to the determination of the vocational rehabilitation issues, we address disability first.

### A. Disability

**[4]** Shortly after the occurrence of the accident giving rise to this case, Defendants accepted the compensability of Plaintiff's injury by filing an

Industrial Commission Form 60 ("Employer's Admission of Employee's Right to Compensation") and commenced payment of temporary total disability benefits as a result. It is well settled that entering into a Form 60 does not create a presumption of ongoing disability. *Sims v. Charmes/Arby's Roast Beef*, 142 N.C. App. 154, 159–60, 542 S.E.2d 277, 281–82, *disc. rev. denied*, 353 N.C. 729, 550 S.E.2d 782 (2001) ("[A]dmitting compensability and liability, whether through notification of the Commission by the use of a Form 60 or through paying benefits beyond the statutory period . . . does not create a presumption of continuing disability[.]"). Thus, once the continuing status of Plaintiff's disability was disputed, it became Plaintiff's burden to prove that she remained disabled. *See Russell v. Lowes Prod. Distrib.*, 108 N.C. App. 762, 765–66, 425 S.E.2d 454, 457 (1993). As this Court has repeatedly explained, an employee can meet the burden of proving disability by producing either: (1) medical evidence that the employee is physically or mentally incapable of work in any employment; (2) evidence that the employee is capable of some work, but has been unsuccessful in her effort to obtain employment after a reasonable effort; (3) evidence that the employee is capable of some work, but it would be futile to pursue other employment because of pre-existing conditions like age, inexperience, or lack of education; or (4) evidence that the employee has obtained other employment at a wage less than that earned before the injury. *Id.* Furthermore, "[w]hile the [C]ommission is not required to make findings as to each fact presented by the evidence, it is required to make specific findings with respect to crucial facts upon which the question of [P]laintiff's right to compensation depends." *Gaines v. L. D. Swain & Son, Inc.*, 33 N.C. App. 575, 579, 235 S.E.2d 856, 859 (1977). Because the question of her disability affects Plaintiff's right to compensation, the Commission is required to make explicit findings on the existence and extent of that disability when it is in dispute. *Plott v. Bojangle's Rests., Inc.*, 181 N.C. App. 61, 65, 638 S.E.2d 571, 574 (2007), *rev'd on other grounds*, 361 N.C. 577, 578, 652 S.E.2d 920, 920 (2007).

Defendants assert that they have disputed the issue of whether Plaintiff is disabled at "every level" of the protracted litigation in this case. Despite their repeated requests for a determination from the Commission, Defendants argue that the Commission has "analyze[d Plaintiff's] case as if disability was a given," made insufficient factual findings, and reached no conclusions on the disputed question of disability. We agree.

**POWE v. CENTERPOINT HUMAN SERVS.**

[226 N.C. App. 256 (2013)]

Notwithstanding the tortured procedural history of this case,[2] it appears that at least by 11 December 2008, when Defendants filed a request for hearing before the Commission, they raised the issue of whether Plaintiff was and had been disabled within the meaning of the Workers' Compensation Act. Indeed, the issue of Plaintiff's disability was (1) listed by Defendants in the parties' pretrial agreement before the last evidentiary hearing, conducted in February 2009; (2) acknowledged as an issue in the opinion and award of the deputy commissioner who conducted that hearing; and (3) recognized in the decision of the full Commission at issue in *Powe II*. The issue is currently mischaracterized in the Commission's opinion as a "stipulation" of the parties which asserts that the parties have agreed "Plaintiff has been *totally disabled* and paid indemnity benefits" for various periods of time, including from 13 October 2008 "through the present and continuing." However, a thorough review of the record reveals that Defendants have never stipulated to the existence or extent of Plaintiff's disability, despite having made disability payments to Plaintiff pursuant to the Form 60 and various orders of the Commission. On the contrary and as noted above, Defendants have disputed Plaintiff's disability for more than four years without obtaining a resolution.

While the Commission's opinion and award contains sufficient findings regarding the vocational factors that may impact its disability determination (*e.g.*, Plaintiff's age, educational achievements, and work experience), there are no findings regarding her *physical* capacity to work, beyond one conclusory statement that Plaintiff "is capable of earning wages in some employment[.]" Further, while the Commission correctly cites the *Russell* factors in its first conclusion of law and correctly observes in its second conclusion of law that an employee may lose the right to compensation by failing to cooperate with vocational rehabilitation services "*[a]fter disability has been shown*," it made no conclusion of law as to Plaintiff's disability status. (Emphasis added).

It appears that the Commission has improperly or accidentally converted the fact that Defendants paid temporary total disability benefits into a wholly unsupported stipulation that Plaintiff was totally disabled during the payment periods. Defendants' proper payment of disability

---

2. Defendants filed multiple Form 24 applications to terminate Plaintiff's disability benefits, followed by (1) Plaintiff's motions for reinstatement of her benefits, (2) at least two evidentiary hearings before deputy commissioners, (3) two appearances before the full Commission, (4) two previous appeals to this Court, (5) petitions for discretionary review filed with our Supreme Court, and (6) this Court's remand to the full Commission for further proceedings.

benefits occurred during periods when Plaintiff's disability was not in dispute or when Defendants were under an order to make such payments — despite simultaneously contesting the correctness of the order to do so in hearings and full Commission appeals. The Commission seems to have focused on the vocational rehabilitation issue to the exclusion of the disability issue. As the Commission accurately asserted, however, the impact of an employee's refusal to cooperate with vocational rehabilitation services on that employee's right to indemnity compensation arises only after she has met her burden of establishing disability. *See Russell*, 108 N.C. App. at 765–66, 425 S.E.2d at 457.

The Commission's failure to make a determination of disability affects Plaintiff's right to compensation and must be remedied. *See Kanipe v. Lane Upholstery*, 141 N.C. App. 620, 627, 540 S.E.2d 785, 790 (2000) (requiring remand when the Commission failed to make findings regarding its basis for denying disability compensation). Accordingly, we are obligated to again remand this case for a determination by the Commission as to whether Plaintiff is disabled under *Russell*. If the Commission determines that Plaintiff has not met her burden of proving disability during the contested periods, then the issues regarding Plaintiff's cooperation with vocational rehabilitation efforts will be moot. On the other hand, if the Commission resolves the disability issue in Plaintiff's favor, then the issues raised on this appeal by the Commission's resolution of the vocational rehabilitation questions on remand in *Powe II* are likely to resurface. For that reason, and in the interests of judicial economy, we address the issue of vocational rehabilitation raised by this appeal.

### B. Vocational Rehabilitation and Compliance

[5] In *Powe II*, we directed the Commission to determine "why vocational rehabilitation was not being provided." *Powe II*, __ N.C. App. at __, 715 S.E.2d at 305. Though we had already disposed of the case on other grounds, we offered instruction in *obiter dictum* on the question of "whether the Commission may conclude both that [P]laintiff failed to cooperate with vocational services . . . and reinstate temporary total disability benefits" because the issue could "arise again on remand." *Id.* at __, 715 S.E.2d at 304–05; *see also Trs. of Rowan Tech. Coll. v. J. Hyatt Hammond Assocs., Inc.*, 313 N.C. 230, 242, 328 S.E.2d 274, 281 (1985) ("Language in an opinion not necessary to the decision is *obiter dictum* and later decisions are not bound thereby.").

We based our instruction on the Commission's use of N.C. Gen. Stat. § 97-25 ("the Statute"), which stated that an employee's refusal to

accept vocational rehabilitation, when ordered by the Commission, bars that employee from further compensation "until such refusal ceases." N.C. Gen. Stat. § 97-25 (2010).[3] Relying on the language in the Statute, the Commission determined in its 28 April 2010 opinion that Plaintiff had "refused" vocational rehabilitation between 22 June 2006 and 22 February 2008. *See generally Powe II,* __ N.C. App. at __, 715 S.E.2d at 303 ("Conduct rising to the level of sabotage — preventing the very purpose of vocational rehabilitation — would have the same effect as an outright refusal of vocational rehabilitation. Even, however, in the absence of sabotage, an employee's participation may be so minimal that the purpose of vocational rehabilitation cannot be served."). On 23 February 2008, however, Plaintiff's refusal was deemed to have ceased because Defendants stopped providing vocational rehabilitation services. At that time, as the Commission's reasoning goes, Plaintiff was unable to continue to refuse those services because she no longer had access to them. Given that logic, the Commission determined that temporary total disability benefits should be resumed beginning at the point after Plaintiff's ability to refuse was taken away (i.e., 23 February 2008). As we noted in *Powe II,* we are not aware of any authority permitting this approach, and Plaintiff has not cited any such authority. *Powe II,* __ N.C. App. at __, 715 S.E.2d at 305. Obviously, however, Plaintiff's right to compensation as of 23 February 2008 would depend, in the first instance, on whether she met her burden under *Russell* of proving that she remained disabled.

Given that circumstance and tolerating its unusual approach in this case, we directed the Commission to clarify the basis for its reasoning. *Powe II,* __ N.C. App. at __, 715 S.E.2d at 304–05. The Commission's decision at that point had provided little information on why it ordered a resumption of temporary total disability benefits or whether the cessation of vocational rehabilitation was appropriate. *See id.* In order to settle the matter, we tied the validity of the Commission's decision to whether the cessation of services was exclusively the result of Plaintiff's failure to substantially comply. *Id.* at __, 715 S.E.2d at 305. Specifically, we instructed that the Commission's decision to reinstate benefits was in error if Defendants had ceased providing vocational rehabilitation because of Plaintiff's non-cooperation. *Id.* We also suggested that temporary total disability benefits could be reinstated if the catalyst for cessation was something else or if the Commission determined that vocational rehabilitation should have continued. *Id.* Lastly, we required

---

3. Section 97-25 has been amended and no longer applies to vocational rehabilitation. The relevant language can now be found in N.C. Gen. Stat. § 97-32.2 (2011) and remains unchanged.

the Commission to make new findings of fact and conclusions of law that directly supported its determination in either circumstance. *Id.*

In its subsequent order, the Commission based its findings almost exclusively on the testimony of Ellington. That testimony was largely the result of a colloquy between Ellington (here, "A") and counsel for Defendants (here, "Q"):

Q. You indicated that vocational rehabilitation [("voc rehab")] stopped sometime around February of 2008?

A. Yes, sir.

Q. Why did voc rehab stop at that time?

A. At that time I felt that we had covered all of the vocational activities that I could help her with and I didn't feel like I was affecting any change in [Plaintiff].

Q. What sorts of things would need to happen from [Plaintiff's] standpoint in order to effect change, in your opinion?

A. I feel that a lot of the vocational activities that we did were very one-sided. I would find the job leads, provide them and there was follow up to those leads according to what she documented, but not a lot on her end of finding leads in newspapers, utilizing community, you know, the library for job searching or, you know, going to the Goodwill and the Job Link Center, that kind of thing.

    . . . .

Q. [D]oes it hurt the vocational rehabilitation process when you have more of a one-sided situation where you're doing the leg work and finding the jobs and — and while the claimant may be going through with following up on them, is — is not looking for them on their own?

A. I certainly believe it helps to have somebody participate more fully in the process.

    . . . .

Q. When you stopped voc rehab in this case did you feel like you were kind of going through the same motions over and over again?

A.   Yes.

Q.   And did you feel like that was productive or something
     . . . that was likely to find employment for [Plaintiff]?

A.   Of course, I hope that we would find some employ-
     ment and some good opportunities but it didn't turn
     out that way.

In addition, the following exchange occurred on cross examination
between Ellington (here, "A") and Plaintiff's attorney (here, "Q"):

Q.   [H]ow did it come about that your services were cut
     off . . . because one day you were coming every other
     week and then all of a sudden it was stopped, . . . what
     started that?

A.   That was me. I decided that we were at the point that
     I could no longer affect change in [Plaintiff] to be —
     for her to, you know, lead to a job, I mean, the things
     that we had tried or I had encouraged her to do, you
     know, utilized community activities and networking,
     that type of thing.

     . . . .

     I believe that . . . I provided services that could help
     her or assist her in that process. [A]nd there were bar-
     riers that she presented to doing some of the activities
     on her own, independently and at that time I felt that,
     . . . we had exhausted all of the things, other things or
     suggestions that I could make to further the process.

     Based on this testimony, the Commission concluded on remand
that (1) cessation of vocational rehabilitation was not solely due to
Plaintiff's non-cooperation and (2) vocational rehabilitation should
have continued. In support of those conclusions, the Commission found
that "Plaintiff's vocational rehabilitation ended because []Ellington felt,
at that time, that she had covered all of the vocational activities that
she could help Plaintiff with, and she did not feel like she was effecting
any change in Plaintiff." It noted that "Plaintiff [was] capable of earning
wages in some employment and . . . would have benefitted from contin-
ued vocational counseling, including computer training[.]" Accordingly,
the Commission found "that vocational rehabilitation should have con-
tinued after February 22, 2008[.]"

Defendants argue on appeal that these determinations are not based on competent evidence. They contend that the cessation of vocational rehabilitation was solely due to Plaintiff's non-cooperation and argue that "there was no evidence given of any reason for the suspension of vocational rehabilitation other than Plaintiff's misbehavior." Thus, Defendants assert, Ellington ended vocational rehabilitation efforts only because "Plaintiff made such a mockery of the process that it was rendered completely meaningless." We are constrained to disagree.[4]

As a matter of policy, Defendants contend that "the law does not allow Plaintiff, through her own non-compliance, to sabotage the process to the point that vocational rehabilitation ceases, and then claim the right to resumption of benefits." We agree and note that this statement represents an accurate characterization of the law under *Powe II*. Despite Plaintiff's substantial non-compliance and significant interference with vocational rehabilitation, however, the Commission found that the evidence failed to indicate that Plaintiff sabotaged vocational rehabilitation to the extent that it could no longer continue. Instead, it determined that Ellington chose to end rehabilitation for reasons in addition to Plaintiff's behavior.

While we may disagree with the Commission's findings, we are bound by those findings "so long as there is any credible evidence to support [them]," even when the record provides evidence to the contrary. *Brooks v. Capstar Corp.*, 168 N.C. App. 23, 26, 606 S.E.2d 696, 698 (2005). "Where any competent evidence exists to support a finding of the Commission, that finding is binding upon this Court. Thus, even though there may be evidence from which a fact finder could determine plaintiff has failed to cooperate with vocational rehabilitation efforts, we must uphold the finding." *Bowen v. ABF Freight Sys., Inc.*, 179 N.C. App. 323, 331, 633 S.E.2d 854, 859–60 (2006) (citation omitted).

As noted above, Ellington testified at the hearings that she "had exhausted all of the things, other things or suggestions that [she] could make to further the process." She also accepted the characterization of Plaintiff's effort to gain employment as "unassertive," but not "uncooperative." When the deputy commissioner pointedly asked if Plaintiff had been cooperative, Ellington responded equivocally by saying: "I think she followed up on the leads that I provided her but I feel that in many aspects of the rehab process, she was very dependent on me leading

---

4. We note, however, that Ellington is at least the third vocational rehabilitation professional to work with Plaintiff. Issues regarding Plaintiff's behavior and compliance also arose with the other professionals.

**POWE v. CENTERPOINT HUMAN SERVS.**

[226 N.C. App. 256 (2013)]

the process." This statement indicates that Plaintiff was difficult to work with, motivate, and rehabilitate, but also that she was willing to do some work (*e.g.*, "follow[ing] up on . . . [job] leads") to attain employment. When Ellington was asked whether Plaintiff had done anything to *prevent* herself from getting hired, she answered in the negative.[5] Though this evidence is — at best — minimal, it is competent to support the Commission's findings of fact under our deferential standard. *See Sanhueza v. Liberty Steel Erectors*, 122 N.C. App. 603, 606–07, 471 S.E.2d 92, 94–95 (1996) (citation omitted) ("Although, plaintiff's testimony tended to contradict defendants' evidence, the Commission chose not to believe plaintiff's testimony. The Commission's assessment of witness credibility is conclusive. Accordingly, we conclude that there is competent evidence in the record to support the Commission's determination that plaintiff unjustifiably refused to cooperate with defendants' rehabilitation efforts."); *see also Matthews v. Petroleum Tank Serv., Inc.*, 108 N.C. App. 259, 264, 423 S.E.2d 532, 535 (1992) (citation omitted) ("The Commission is the sole judge of the credibility of witnesses and the weight to be given their testimony, and its determination of these issues is conclusive on appeal."). Though there is ample evidence that Plaintiff's failure to substantially comply with vocational rehabilitation was likely the most significant contributing factor in Ellington's decision to end services, there is also some evidence from Ellington herself to support the Commission's determination that Ellington's decision was premature and due, at least in part, to factors other than Plaintiff's noncompliance.

The Commission also determined that Plaintiff would have benefitted from continued vocational counseling, including computer training and, thus, that rehabilitation services should have continued. Despite Defendants' strenuous contention to the contrary, given Plaintiff's extensive résumé, lack of experience with computers, and the deferential standard that we must employ, we are again constrained to conclude that the Commission's finding that Plaintiff would benefit from continued rehabilitation, including computer training, is based on competent evidence under *Powe II*.

AFFIRMED IN PART; REMANDED IN PART.

Judges STEELMAN and McCULLOUGH concur.

---

5. Ellington never indicated that she made the decision to close the case "due *solely* to [Plaintiff's] non-cooperation[.]" *Powe II*, __ N.C. App. at __, 715 S.E.2d at 305 (emphasis added).