IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-519

No. COA21-236

Filed 2 August 2022

North Carolina Industrial Commission, No. 14-023351

GERALDINE M. CROMARTIE, Employee, Plaintiff,

v.

GOODYEAR TIRE & RUBBER COMPANY, INC., Employer, LIBERTY MUTUAL INSURANCE COMPANY, Carrier, Defendants.

Appeal by Defendants from opinion and award entered 24 November 2020 and order entered 23 December 2020 by the Full Commission of the North Carolina Industrial Commission. Heard in the Court of Appeals 8 March 2022.

*Law Offices of Kathleen G. Sumner, by Kathleen G. Sumner and David P. Stewart, and Jay A. Gervasi, Jr., for Plaintiff-Appellee.*

*Young Moore and Henderson, P.A., by Angela Farag Craddock, for Defendants-Appellants.*

INMAN, Judge.

¶ 1    A tire manufacturing company and its insurance carrier (collectively, "Defendants") appeal from an order of the Full Commission of the North Carolina Industrial Commission (the "Full Commission") denying their application to terminate compensation payments to an employee after paying her temporary disability over the last eight years because she sustained an injury to her hand in the

course of her employment. Defendants argue the Full Commission: (1) failed to address whether the employee presented competent evidence to support a finding of total disability as a result of her work injury; and (2) erred in concluding the alternative position was not suitable employment for the employee. After careful review of the record and our precedent, we remand the opinion and award of the Full Commission for additional findings.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The record below discloses the following:

Plaintiff-Appellee Geraldine M. Cromartie ("Ms. Cromartie") had worked for Defendant-Appellant Goodyear Tire and Rubber Co. ("Goodyear") for over 16 years as a machine operator in Goodyear's tire production facility in Fayetteville, North Carolina when she injured her hand on 30 May 2014. While performing her duties as a machine operator, Ms. Cromartie sustained a severe laceration to her right hand, requiring sutures. She developed a painful raised scar that did not heal.

Ms. Cromartie initially received a medical recommendation to refrain from work until 11 July 2014, so she was placed off-duty and began receiving temporary total disability payments of $904.00 per week. Before her injury, Ms. Cromartie had worked up to 42 hours per week and earned an average weekly wage of $1,413.33. Ms. Cromartie returned to work in her machine operator position on schedule, with no restrictions.

¶ 5　　　After returning to work, Ms. Cromartie complained of continued pain and swelling from her scar. Goodyear sent Ms. Cromartie to Doctor James Post ("Dr. Post"). Dr. Post noted Ms. Cromartie experienced "knifelike pain" in the back of her right hand when she attempted to grip anything with that hand. He determined Ms. Cromartie had a "right thumb symptomatic hypertrophic scar with distal neuroma formation of the branch of the radial sensory nerve." Dr. Post recommended Ms. Cromartie return to work with restrictions—no lifting anything greater than five pounds and no forceful gripping for four weeks. On 21 July 2014, Goodyear placed Ms. Cromartie out of work because Goodyear could not accommodate her work restrictions. Goodyear reinstated Ms. Cromartie's temporary disability compensation at that time.

¶ 6　　　Ms. Cromartie returned to Dr. Post for treatment several times in August and September and on 11 September 2014, Dr. Post performed a scar revision with excision procedure on Ms. Cromartie's right hand. Dr. Post recommended different work restrictions: no lifting anything greater than five pounds and no pushing or pulling greater than 40 pounds.

¶ 7　　　On 14 October 2014, Ms. Cromartie returned to a restricted duty assignment teaching safety courses at Goodyear to accommodate her work restrictions. On 3 December 2014, Dr. Post modified her work restrictions once more: no lifting greater than 15 pounds and no pushing or pulling greater than 40 pounds. He also ordered

that Ms. Cromartie attend physical therapy sessions through 5 January 2015. Ms. Cromartie returned to work light duty on 3 February 2015. As of 3 March 2015, Dr. Post detected no significant improvement in Ms. Cromartie's symptoms, noted a diagnosis of "neuroma," and ordered she complete a functional capacity evaluation ("FCE").

¶ 8    On 14 April 2015, Lauri Jugan, PT, ("Ms. Jugan") conducted an FCE on Ms. Cromartie but was unable to determine Ms. Cromartie's functional capabilities because she had "failed to give maximum voluntary effort." On 21 April 2015, Dr. Post determined Ms. Cromartie had reached maximum medical improvement and rated her right upper extremity seven percent permanent partial disability. Noting the inconclusive FCE, Dr. Post assigned Ms. Cromartie permanent work restrictions of no lifting greater than 20 pounds and no repetitive forceful gripping or grasping. Ms. Cromartie continued working in the light duty position, and Goodyear did not offer her a different permanent position.

¶ 9    In May 2015, Goodyear and Ms. Cromartie entered into a Consent Agreement, approved by the Deputy Commissioner, authorizing a one-time evaluation with plastic surgeon Doctor Anthony DeFranzo ("Dr. DeFranzo") and requiring Ms. Cromartie to engage in a repeat FCE of her hand. Per the agreement, Defendants acknowledged Ms. Cromartie "sustained a compensable injury by accident to her right hand pursuant to [N.C. Gen. Stat. §] 97-18(b)." In August 2015, Dr. DeFranzo

evaluated Ms. Cromartie, diagnosed her with complex regional pain syndrome, and suggested sedentary work with no lifting over 10 pounds.

¶ 10     On 30 September 2015, Ms. Jugan repeated the FCE on Ms. Cromartie, and determined, among other things, that Ms. Cromartie's right hand was limited to 20 pounds lifting, 30 pounds pulling, 39 pounds pushing, and 12.5 pounds lifting above the shoulder, demonstrating her capacity for a "[m]edium demand vocation."

¶ 11     On 3 November 2015, Goodyear sent Ms. Cromartie for an independent medical evaluation with Doctor Richard Ramos ("Dr. Ramos"). Dr. Ramos diagnosed her with neuropathic pain of her right hand and symptoms of complex regional pain syndrome and suggested she would benefit from pain management medication. Goodyear reinstated temporary total disability compensation on 10 November 2015.

¶ 12     Ms. Cromartie continued treatment with Dr. Ramos and Dr. Post over the next two years. In June 2017, Dr. Post reaffirmed he could not offer Ms. Cromartie further medical treatment and maintained the same permanent work restrictions he had previously prescribed. In the same month, Dr. Ramos determined Ms. Cromartie was at maximum medical improvement and released her from his care.

¶ 13     Goodyear's job-matching contractor identified a position in compliance with Dr. Ramos's work restrictions for Ms. Cromartie: "Production Service Truck Carcasses" ("Carcass Trucker"). The position primarily consisted of driving a truck to deliver parts of tires, referred to as "carcasses," to and from building stations and

storage over a 12-hour shift. In particular, the position required driving the truck for 12 hours, rarely lifting up to 25 pounds when carcasses fell from the trailer, and 30 pounds of force, which can be split between each hand by 15 pounds lifting and 15 pounds pushing, to replace the truck's battery.

¶ 14 In February 2018, Goodyear requested Dr. Ramos review and approve the position if he agreed the position was within Ms. Cromartie's work restrictions. On 1 March 2018, Dr. Ramos approved the position for Ms. Cromartie, and on 6 March 2018, Goodyear formally offered Ms. Cromartie a job as Carcass Trucker. She refused the offer. On 16 March 2018, Defendants filed a "Form 24 Application to Terminate or Suspend Payment of Compensation" with the Industrial Commission, asserting Ms. Cromartie unjustifiably refused suitable employment.

¶ 15 On 29 March 2018, Ms. Cromartie returned to Dr. DeFranzo, the plastic surgeon who had evaluated her three years earlier, with a Workers' Compensation Medical Status Questionnaire. Dr. DeFranzo assigned permanent restrictions of "light duty" and "sedentary" work that required Ms. Cromartie not to lift more than 10 pounds. On 26 April 2018, the Special Deputy Commissioner denied Defendants' Form 24 application, concluding Ms. Cromartie was justified in refusing the Carcass Trucker position in part because it did not fall within the sedentary work limitations assigned by Dr. DeFranzo. Defendants appealed the order denying suspension of Ms. Cromartie's benefits and contested Ms. Cromartie's disability.

¶ 16 Upon Goodyear's request, on 26 September 2018, Ms. Cromartie underwent an additional examination with Doctor Marshall Kuremsky ("Dr. Kuremsky"). Dr. Kuremsky "subjectively" believed Ms. Cromartie could return to work without restrictions after confirmation from a third FCE and that she could perform the Carcass Trucker position. Based on Dr. Kuremsky's recommendation, Goodyear again offered Ms. Cromartie the position of Carcass Trucker on 2 October 2018. Ms. Cromartie again refused the position.

¶ 17 One month later, on 5 November 2018, Goodyear approved Ms. Cromartie's application for medical retirement. Ms. Cromartie was eligible for medical retirement because she had already qualified for Social Security Disability.

¶ 18 In February 2019, Defendants' appeal of the Special Deputy Commissioner's order came before the Deputy Commissioner for an evidentiary hearing. The Deputy Commissioner filed an opinion and award on 10 January 2020, concluding that Ms. Cromartie was disabled following her receipt of Social Security Disability benefits and Goodyear's negotiated pension disability plan. The Deputy Commissioner gave "great weight" to the medical opinion of Dr. DeFranzo, compared to the opinions of the other medical experts, and his recommendation that Ms. Cromartie should be limited to sedentary work and concluded the Carcass Trucker position was not suitable employment for Ms. Cromartie. Defendants appealed to the Full Commission.

Following a hearing on 16 June 2020, the Full Commission filed its opinion and award on 24 November 2020. The Full Commission afforded the greatest weight to the expert opinion of treating surgeon Dr. Post and found that (1) Ms. Cromartie had reached maximum medical improvement on 21 April 2015 and (2) her permanent work restrictions were those assigned by Dr. Post on that date, including no lifting over 20 pounds with her right arm and no repetitive forceful gripping or grasping with her right hand. The Full Commission found and then concluded that the Carcass Trucker position "is outside of [Ms. Cromartie]'s permanent restrictions because on its face, without any of the modifications explained . . . , the job requires lifting over 20 pounds." It further concluded the Deputy Commissioner properly denied Defendants' application to terminate compensation payments because Defendants failed to demonstrate Ms. Cromartie "has the ability to earn pre-injury wages in the same employment after reaching maximum medical improvement."

On 4 December 2020, Defendants filed a motion for reconsideration, asserting the Full Commission had failed to enter findings of fact and conclusions of law addressing the issue of whether Ms. Cromartie remained totally disabled. The Full Commission denied Defendants' motion on 23 December 2020. Defendants appeal the Full Commission's opinion and award and its order denying their motion for reconsideration to this Court.

## II.    ANALYSIS

## A. Standard of Review

In our review of an award from the Full Commission, we are limited to a determination of "(1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are supported by the findings." *McAuley v. N.C. A&T State Univ.*, 280 N.C. App. 473, 2021-NCCOA-657, ¶ 8 (citation omitted). "As long as the Commission's findings are supported by competent evidence of record, they will not be overturned on appeal." *Rackley v. Coastal Painting*, 153 N.C. App. 469, 472, 570 S.E.2d 121, 124 (2002). The Commission's "conclusions of law are reviewable *de novo*." *Whitfield v. Lab. Corp. of Am.*, 158 N.C. App. 341, 348, 581 S.E.2d 778, 783 (2003) (citation omitted).

"[T]he Workers' Compensation Act should be liberally construed, whenever appropriate, so that benefits will not be denied upon mere technicalities or strained and narrow interpretations of its provisions." *Booth v. Hackney Acquisition Co.*, 270 N.C. App. 648, 653, 842 S.E.2d 171, 175 (2020) (citation omitted).

## B. Disability

As an initial matter, Ms. Cromartie alleges the issue of her disability is not yet ripe. We disagree.

"[O]nce an injured employee reaches maximum medical improvement, either party can seek a determination of permanent loss of wage-earning capacity." *Pait v. Se. Gen. Hosp.*, 219 N.C. App. 403, 412, 724 S.E.2d 618, 625 (2012) (quotation marks

and citation omitted). In *Pait*, this Court held that so long as competent evidence before the Commission indicated that the worker's condition had reached maximum medical improvement, "the parties' dispute as to the extent of plaintiff's disability and defendants' liability therefor was ripe for the Commission's hearing." *Id.*

¶ 25 In Finding of Fact 34, the Full Commission determined that Ms. Cromartie had reached maximum medical improvement more than seven years ago, in April 2015. The issue of Ms. Cromartie's disability became ripe for determination by the Commission on the date she reached maximum medical improvement. *See id.* We now address the merits of Defendants' arguments.

### 1. *Insufficient Findings about Ms. Cromartie's Disability*

¶ 26 Defendants assert the Full Commission erred in failing to determine Ms. Cromartie's total disability status. We agree and remand this matter to the Commission to make necessary factual findings. The Full Commission, in its discretion, may make additional findings based on the record before it or receive additional evidence.

¶ 27 When reviewing workers' compensation claims, "[t]he Full Commission must make definitive findings to determine the critical issues raised by the evidence[.]" *Bryant v. Weyerhaeuser Co.*, 130 N.C. App. 135, 139, 502 S.E.2d 58, 61-62 (1998) (quotation marks and citation omitted). "[W]hile the Commission is not required to make findings as to each fact presented by the evidence, it is required to make specific

findings with respect to crucial facts upon which the question of Plaintiff's right to compensation depends." *Powe v. Centerpoint Human Servs.*, 226 N.C. App. 256, 262, 742 S.E.2d 218, 222 (2013) (cleaned up). When "the question of [Plaintiff's] disability affects Plaintiff's right to compensation, the Commission is required to make explicit findings on the existence and extent of that disability when it is in dispute." *Id.* If the Full Commission fails to make specific findings of fact, we must remand the issue to the Commission for a determination. *See Johnson v. Southern Tire Sales & Serv.*, 358 N.C. 701, 708, 599 S.E.2d 508, 513 (2004) (remanding the issue of disability to the Commission "for the purpose of making adequate findings of fact").

Our General Statutes define disability as "incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2021). To support an award of disability compensation, an employee must prove:

> (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury.

*Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). An employee may satisfy this burden in one of the following ways:

> (1) the production of medical evidence that he is physically

or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Russell v. Lowes Prod. Distrib.*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (citations omitted). Once the employee has established the existence and extent of disability, the burden shifts to the employer to demonstrate that it has offered the employee suitable employment. *See Smith v. Sealed Air Corp.*, 127 N.C. App. 359, 361, 489 S.E.2d 445, 446-47 (1997).

¶ 29 Defendants compare this case to *Powe*. In *Powe*, the employer acknowledged that a compensable injury occurred and commenced payment of temporary total disability, but the employer disputed "the continuing status of Plaintiff's disability." 226 N.C. App. at 261-62, 742 S.E.2d at 222. Though the issue of disability was before the Full Commission, it made "insufficient factual findings" and "reached no conclusions on the disputed question of disability." *Id.* at 262, 742 S.E.2d at 222. We remanded the case to the Full Commission to enter "explicit findings on the existence and extent of [Plaintiff's] disability." *Id.* at 262, 264, 742 S.E.2d at 222-23.

¶ 30 In this case, like the employer in *Powe*, Goodyear has acknowledged that Ms.

Cromartie had suffered a compensable injury and paid her temporary total disability. However, like the employer in *Powe*, throughout "every level" of litigation, *id.* at 262, 742 S.E.2d at 222, Defendants have disputed whether Ms. Cromartie remained totally disabled. Similar to the Full Commission in *Powe*, even though the critical issue of disability was before the Full Commission in this case, the Commission made no findings or conclusions about whether Ms. Cromartie remained disabled.[1] Since the question of Ms. Cromartie's disability affects her right to compensation, the Commission must make express findings about Ms. Cromartie's disability status. *See id.*

¶ 31        We remand to the Full Commission for it to enter "explicit findings on the existence and extent of [Ms. Cromartie's] disability[.]" *Id.*

---

[1] We note that while the Full Commission did not include explicit findings on the existence or extent of Ms. Cromartie's disability, the Deputy Commissioner did include findings and conclusions of law regarding Ms. Cromartie's disability in its decision:

> 5. . . . Based on the preponderance of the evidence, the undersigned concludes that Employee has met her burden of proving disability based upon the medical evidence in this as well as the fact that she qualified for Social Security Disability benefits and the defendant-employer's negotiated Pension Disability Plan, based upon the determination that she was "permanently incapacitated" and "totally disabled."

The Deputy Commissioner's findings and conclusions are, however, superseded by the Full Commission's findings and conclusions. *See Jenkins v. Piedmont Aviation Servs.*, 147 N.C. App. 419, 427, 557 S.E.2d 104, 109 (2001) ("The deputy commissioner's findings of fact are not conclusive; only the Full Commission's findings of fact are conclusive." (citation omitted)).

### 2. *Suitability of Alternative Employment Position*

¶ 32       Goodyear further asserts the Full Commission erred in determining the Carcass Trucker position was not suitable employment for Ms. Cromartie. We disagree.

¶ 33       We have defined suitable employment as "any job that a claimant is capable of performing considering [her] age, education, physical limitations, vocational skills and experience." *Griffin v. Absolute Fire Control, Inc.*, 269 N.C. App. 193, 200, 837 S.E.2d 420, 425 (2020) (citation omitted). "If an injured employee refuses suitable employment . . . , the employee shall not be entitled to any compensation[.]" N.C. Gen. Stat. § 97-32 (2021). The burden of proof is first on the employer "to show that an employee refused suitable employment." *Wynn v. United Health Servs./Two Rivers Health-Trent Campus*, 214 N.C. App. 69, 74, 716 S.E.2d 373, 379 (2011) (citation omitted). "Once the employer makes this showing, the burden shifts to the employee to show that the refusal was justified." *Id.* (citation omitted).

¶ 34       In its opinion and award, the Full Commission concluded, "Defendant-Employer's Production Service Truck Carcasses position, unless modified in several aspects, is not within Plaintiff's physical limitations. . . . and is therefore not suitable post-MMI employment." We hold the Full Commission's findings support its conclusion about the suitability of the Carcass Trucker position. *See McAuley*, ¶ 8.

¶ 35       Relying on Dr. Post's testimony and giving less weight to the testimony from

other doctors, the Full Commission found by a preponderance of the evidence that "[Ms. Cromartie] reached [maximum medical improvement] on April 21, 2015 and her permanent work restrictions are the restrictions assigned by Dr. Post on that date, including no lifting over 20 pounds with her right arm and no repetitive forceful gripping or grasping with her right hand." The Full Commission determined the demands of the Carcass Trucker position exceeded the restrictions prescribed by Dr. Post:

> [T]he Production Service Truck Carcasses position is outside of [Ms. Cromartie]'s permanent restrictions because on its face, without any of the modifications explained by Mr. Murray or Ms. Flantos, the job requires lifting over 20 pounds. Accordingly, the Full Commission further finds that [Goodyear's] March 16, 2018 Form 24 was properly disapproved because the job [Ms. Cromartie] refused was not within her restrictions.

¶ 36        These findings were supported by competent evidence. *See id.* The Carcass Trucker position required 12 hours of driving while gripping the steering wheel, occasionally lifting 25 pounds, and pushing or pulling 30 pounds total. During his testimony, Dr. Ramos noted the requirements of this position did not comply with Ms. Cromartie's permanent work restrictions. Both Dr. DeFranzo and Dr. Post testified that they did not approve the Carcass Trucker position because it did not comply with Ms. Cromartie's permanent work restrictions. Despite Goodyear's plea to the contrary, we cannot reweigh the evidence. *See Adams v. AVX Corp.*, 349 N.C. 676,

681, 509 S.E.2d 411, 414 (1998) ("[T]his Court does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." (quotation marks and citation omitted)); *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 115, 530 S.E.2d 549, 552 (2000) ("The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony." (citation omitted)).

## III.    CONCLUSION

For the reasons set forth above, we remand to the Full Commission for further findings not inconsistent with this opinion.

REMANDED.

Judges MURPHY and ARROWOOD concur.